COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | § | |
| --- | --- | --- |
| IN THE | § | No. 08-18-00176-CV |
| INTEREST OF | § | Appeal from the |
| O.E.R. AND L.F.J., | § | 109th District Court |
| CHILDREN. | § | of Andrews County, Texas |
| | § | (TC# 20,814) |
| | § | |

## O P I N I O N

This is a termination of parental rights appeal brought by the mother of two children and the father of one of those children. V.M.N. appeals from the judgment terminating her parental rights to O.E.R. and L.F.J. L.J. appeals the portion of the judgment terminating his parental rights to L.F.J. The trial court also terminated the parental rights of M.D.R. to O.E.R., but he has not appealed.[1] We affirm.

### FACTUAL SUMMARY

The Department first became involved with Vicky and the children[2] on August 20, 2016 when it received a report of neglectful supervision. Vicky allowed her abusive ex-boyfriend, Cory

---

[1] To protect the identity of the children, the opinion will refer to V.M.N. by the fictitious name "Vicky," to L.J. by the fictitious name "Larry," to O.E.R.'s father by the fictitious name "Marvin," to the children's caregiver by the fictitious name "Linda," and to the children by their initials. *See* TEX.R.APP.P. 9.8.

[2] At the time of trial, O.E.R. was five-years-old and L.F.J. was two-years-old.

Sanchez, to watch both children even though Vicky knew the children were afraid of him and Sanchez was not allowed unsupervised contact with his own children. During one of those visits, eight-month-old L.F.J. suffered a serious brain injury. In her trial testimony, Vicky denied ever letting Sanchez watch the children. She claimed that they were getting ready for a birthday party and she left L.F.J. asleep on the couch at Sanchez's house for twenty minutes while she gave other family members a ride home. When Vicky returned to pick up L.F.J., Sanchez had the child in his arms and she was not breathing. At the hospital, it was determined that L.F.J. had bleeding in the brain and she had to be transported to a hospital in Lubbock. Sanchez told Vicky that L.F.J. must have fallen off the couch, but one of the doctors told her that the serious injuries could not have been caused by a fall from the couch.

Sanchez was arrested for injury to a child and both children were removed from Vicky's care due to neglectful supervision. The Department became the temporary managing conservator of the children and L.F.J. was placed with Larry. Vicky completed reunification services, including a Dynamics of Domestic Violence class and a Protective Parenting class, and the children were subsequently returned to her.

A little more than a year later, the Department received a report indicating that Vicky may have physically abused O.E.R. who was nearly five-years-old. The child was sent home from school on Wednesday, September 13, 2017 for bad behavior and he did not attend school the following day. When O.E.R. returned to school on September 15, he had what appeared to be handprints on both sides of his face and he demonstrated how his mother had hit him. O.E.R. also told school personnel that his tooth hurt and it broke when his mother hit him. After receiving the report, a case worker, Kimberly Salaam, went to the home and spoke with Vicky. When Salaam attempted to speak with O.E.R. alone, Vicky refused to leave the room. Salaam ended the

interview. On Monday, September 18, Salaam interviewed O.E.R. at school, and he stated, while pointing to both of his cheeks, that his mother had hit him in the face. O.E.R. demonstrated how his mother had hit him with an open hand. The bruising was still visible on O.E.R.'s face and one of his teeth was chipped. O.E.R. additionally stated that Vicky had choked him with her hands.

Salaam interviewed Vicky later that same day. She admitted spanking O.E.R. on the buttocks but denied striking his face. When asked about the bruising on O.E.R.'s face that looked like handprints, Vicky suggested that it might have happened when he got his head stuck in a chair. O.E.R. showed both Salaam and his mother the chipped tooth, but Vicky said the tooth had been like that for a long time.

On September 20, 2017, O.E.R. was interviewed at the Andrews Child Advocacy Center by forensic interviewer Kelli Crouse. O.E.R. not only stated that his mother had hit him, he demonstrated how she slapped him with an open hand. Vicky was arrested on outstanding warrants and for injury to a child.

On September 21, 2017, the Department filed a petition seeking to terminate the parental rights of Vicky to O.E.R and L.F.J. The petition also sought termination of the parental rights of O.E.R.'s father, Marvin, and L.F.J.'s father, Larry. The trial court entered an emergency order removing the children and naming the Department as the temporary managing conservator. O.E.R. was placed with his paternal aunt, "Linda." L.F.J. was initially placed with her father, Larry, but the Department removed her in July 2018 and placed her with Linda after Larry tested positive for cocaine and marijuana. Vicky did not inform the Department that Larry had been violent during their relationship. The Department subsequently learned that Larry had been allowing Vicky to have unsupervised visits with L.F.J. while she was in his care.

The Department developed service plans for Vicky and Larry. Vicky was required to

complete a psychological evaluation and to follow all recommendations resulting from the evaluation. Additionally, she was required to complete domestic violence counseling and parenting classes. The service plan also required Vicky to maintain employment and provide a safe and stable home environment for the children. Vicky did not complete either the trauma counseling with Teresa Valero or the parenting classes. Further, she was not employed at the time of trial and did not have a stable home for the children.

Larry's service plan required him to maintain employment, provide a safe and stable home environment for L.F.J., to complete parenting classes, and to abstain from the use of illegal drugs. He was also required to submit to random drug testing. Larry failed to complete the Daddy & Me program which is a parenting/substance abuse program. He also tested positive for cocaine and marijuana resulting in the removal of L.F.J. from his care while the case was pending.

On July 10, 2018, Vicky waived her right to a jury trial and entered a negotiated guilty plea to the injury to a child charge. The court assessed her punishment at imprisonment for six years, but suspended the sentence and placed her on community supervision for four years. The trial court conducted the bench trial in the termination case on September 20, 2018.

The evidence at trial showed that Vicky's had a series of romantic relationships with abusive men. O.E.R.'s father, Marvin, physically abused Vicky by pushing her against walls and punching her, and he went so far as to "body-slam" her while she was pregnant with O.E.R. Vicky described Marvin as "really aggressive," "very violent physically," and emotionally abusive. Vicky was involved with Marvin for several years and she continued her relationship with him for "a little while" after O.E.R. was born. Marvin abused Vicky in O.E.R.'s presence. On one occasion, Marvin attempted to leave with O.E.R., and when Vicky attempted to stop him, he choked her.

- 4 -

After ending the relationship with Marvin, Vicky began dating Larry. According to Vicky, Larry was both physically and mentally abusive, and he frequently pushed, choked, and yelled at her. On the night Vicky found out she was pregnant with L.F.J., Larry beat Vicky and left her face black and blue. She did not call the police because she was afraid. Larry left Vicky one week after they found out she was pregnant. O.E.R. witnessed a significant amount of the domestic violence committed by Larry. Vicky admitted that witnessing domestic violence is damaging to a small child.

Vicky dated Sanchez for several months before he injured L.F.J. When Sanchez became angry, he would kick and punch the walls and verbally abuse her. He began this behavior shortly after he began living with her, but she continued to allow him to live with her and the children. Vicky acknowledged that allowing Sanchez to live with her was endangering to the children.

During her testimony, Vicky admitted that she had slapped O.E.R. hard enough to leave a bruise on his face, but she denied breaking his tooth or choking him. Vicky participated in six trauma counseling sessions with Teresa Valero between July 2018 and August 31, 2018, but she did not complete the counseling. Vicky discussed the domestic violence she experienced as a child at the hands of her mother and her mother's boyfriend. She recognized that she was repeating the pattern with her own children. Vicky admitted slapping O.E.R. but continued to deny choking him. She also expressed to Valero that O.E.R.'s aggressive behavior triggered her memories of Larry's abusive behavior. Vicky admitted that she had detached from O.E.R. following the injury to her daughter. Valero explained that this broken attachment contributed to O.E.R.'s violent behavior and anger issues.

O.E.R. and his caregiver Linda are also participating in family counseling with Valero to help Linda understand the cause of O.E.R.'s emotional disturbance. O.E.R. had participated in

twelve sessions with Valero between January 2018 and August 25, 2018. During these sessions, O.E.R. talked about being physically abused by Vicky. When Valero asked O.E.R. if he wanted to have family counseling with Vicky, he replied: "My mom slapped me, choked me, and broke my tooth." His main memory of Vicky is that she hurt him. During one session, O.E.R. stated that he did not like his mother because "her punched everybody." He also said that Vicky threw him against a wall causing him to bleed from his head. According to Valero, if O.E.R. sees his mother, fear and anger will be triggered by these traumatic memories. Valero testified that O.E.R. has made progress but he needs to continue therapy and remain in his current placement with Linda. There is a strong bond between O.E.R. and Linda and he feels safe with her. In Valero's opinion, the strong bond and safe environment are necessary for O.E.R. to heal emotionally.

The trial court found that the Department had proven by clear and convincing evidence that Vicky had: (1) knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endanger the physical or emotional well-being of the children, pursuant to §161.00l(b)(l)(D), Texas Family Code; (2) engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangers the physical or emotional well-being of the child, pursuant to §161.00l(b)(l)(E), Texas Family Code; and (3) failed to comply with the provisions of a court order that specifically established the actions necessary for Vicky to obtain the return of the children who have been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the children's removal from the parent under Chapter 262 for the abuse or neglect of the child, pursuant to § 161.001(b)(l)(O), Texas Family Code. The court also found by clear and convincing evidence that termination of Vicky's parental rights was in the children's best interest, and it appointed the Department as the permanent managing conservator of the children.

With regard to Larry, the trial court found that the Department had proven by clear and convincing evidence that Larry had: (1) knowingly placed or knowingly allowed L.F.J. to remain in conditions or surroundings which endanger the physical or emotional well-being of the child, pursuant to §161.00l(b)(l)(D), Texas Family Code; (2) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child, pursuant to §161.00l(b)(l)(E), Texas Family Code; and (3) failed to comply with the provisions of a court order that specifically established the actions necessary for Larry to obtain the return of the child, pursuant to § 161.001(b)(l)(O), Texas Family Code. The court also found by clear and convincing evidence that termination of Larry's parental rights was in L.F.J. best interest.

## STANDARDS OF REVIEW

Both Vicky and Larry challenge the legal and factual sufficiency of the evidence supporting the termination order as it applies to each of them. We will separately address their individual sufficiency grounds, but the same standards apply to each of them.

Parental rights may be involuntarily terminated through proceedings brought under Section 161.001 of the Texas Family Code. *See* TEX.FAM.CODE ANN. § 161.001. Under this provision, the petitioner must (1) establish one or more of the statutory acts or omissions enumerated as grounds for termination, and (2) prove that termination is in the best interest of the children. *See id.* Both elements must be established, and termination may not be based solely on the best interest of the child as determined by the trier of fact. *Texas Department of Human Services v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *In the Interest of A.B.B.*, 482 S.W.3d 135, 138 (Tex.App.--El Paso 2015, dism'd w.o.j.). Only one predicate finding under Section 161.001(b)(1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's

best interest. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). We will affirm the termination order if the evidence is both legally and factually sufficient to support any alleged statutory ground the trial court relied upon in terminating the parental rights as well as the finding of best interest. *J.S. v. Texas Department of Family and Protective Services*, 511 S.W.3d 145, 159 (Tex.App.--El Paso 2014, no pet.).

When reviewing the legal sufficiency of the evidence in a termination case, we consider all of the evidence in the light most favorable to the trial court's finding, "to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In the Interest of J.P.B.,* 180 S.W.3d 570, 573 (Tex. 2005), *quoting In re J.F.C.,* 96 S.W.3d 256, 266 (Tex. 2002); *see In re J.O.A.,* 283 S.W.3d 336, 344 (Tex. 2009). We give deference to the fact finder's conclusions, indulge every reasonable inference from the evidence in favor of that finding, and presume the fact finder resolved any disputed facts in favor of its findings, so long as a reasonable fact finder could do so. *In the Interest of J.P.B.*, 180 S.W.3d at 573. We disregard any evidence that a reasonable fact finder could have disbelieved, or found to have been incredible, but we do not disregard undisputed facts. *In re J.P.B.*, 180 S.W.3d at 573; *In re J.F.C.*, 96 S.W.3d at 266.

In a factual sufficiency review, the inquiry is whether the evidence is such that a fact finder could reasonably form a firm belief or conviction about the challenge findings. *See In re J.F.C.*, 96 S.W.3d at 266. We must give due consideration to evidence that the fact finder could reasonably have found to be clear and convincing. *In re J.F.C.*, 96 S.W.3d at 266. A court of appeals should consider whether disputed evidence is such that a reasonable fact finder could not have resolved that disputed evidence in favor of its finding. *Id*. If the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that a fact

finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *Id.*

## VICKY'S APPEAL

In a single issue, Vicky challenges the legal and factual sufficiency of the evidence supporting the trial court's findings on the predicate termination grounds under Section 161.001(b)(1)(D), (E), and (O) and the best interest finding made under Section 161.001(b)(2).

*Section 161.001(b)(1)(D) -- Endangering Environment*

We begin by considering whether the evidence is legally and factually sufficient to support termination of Vicky's parental rights under Section 161.001(b)(1)(D). A parent's rights may be terminated if there is clear and convincing evidence that the parent has knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child. *See* TEX.FAM.CODE ANN. § 161.001(b)(1)(D). Subsection (D) addresses the child's surroundings and environment. *In re N.R.*, 101 S.W.3d 771, 775-76 (Tex.App.--Texarkana 2003, no pet.). In this context, the child's environment refers to the suitability of the child's living conditions as well as the conduct of parents or others in the home. *In re S.R.*, 452 S.W.3d 351, 360 (Tex.App.--Houston [14th Dist.] 2014, pet. denied). Physical violence in the home leads to an unstable and unpredictable environment for children. *See In re U.H.R.*, No. 07-18-00318-CV, 2019 WL 81874, at *5 (Tex.App.--Amarillo Jan. 2, 2019, no pet.)(mem. opn.). A parent's decision to continue living with someone who has committed instances of domestic violence may support an endangerment finding under subsection (b)(1)(D). *See In re M.V.*, 343 S.W.3d 543, 547 (Tex.App.--Dallas 2011, no pet.)(evidence of domestic violence between mother and father was sufficient to establish that mother knowingly placed or knowingly allowed child to remain in conditions or surroundings which endangered his physical

or emotional well-being and that mother engaged in conduct or knowingly placed child with the father who engaged in conduct which endangered child's physical or emotional well-being, thus supporting termination of mother's parental rights).

A child is endangered when the environment creates a potential for danger that the parent is aware of but disregards. *In re E.R.W.*, 528 S.W.3d 251, 264 (Tex.App.--Houston [14th Dist.] 2017, no pet.). The relevant time frame to determine whether there is clear and convincing evidence of endangerment is before the child was removed. *Ybarra v. Texas Department of Human Services*, 869 S.W.2d 574, 577 (Tex.App.--Corpus Christi 1993, no pet.). When seeking termination under subsection (D), the Department must show that the child's living conditions pose a real threat of injury or harm. *In re N.R.*, 101 S.W.3d at 776; *Ybarra*, 869 S.W.2d at 577. Conduct that demonstrates awareness of an endangering environment is sufficient to show endangerment. *In re S.M.L.*, 171 S.W.3d 472, 477 (Tex.App.--Houston [14th Dist.] 2005, no pet.).

The evidence established that Vicky engaged in a series of relationships with emotionally abusive and physically violent men. There is also evidence that Vicky physically abused O.E.R. by slapping his face and choking him. As a result of his exposure to domestic violence at the hands of these men and his mother, O.E.R. suffered traumatic emotional harm. He is currently undergoing trauma counseling to address this issue and he will continue to require counseling in the future. While L.F.J. may have been spared emotional harm, she suffered a serious physical injury at the hands of one of these men. By continuing to engage in these types of relationships, Vicky exposed the children to domestic violence and demonstrated an inability to protect the children while they lived with her. Further, the trial court could have concluded that Vicky would continue to fail to protect the children in the future because Vicky failed to inform the Department that Larry had been violent during their relationship. As a result of Vicky's non-disclosure, the

Department initially placed L.F.J. with Larry.

After considering the evidence in the light most favorable to the trial court's finding, we conclude the evidence is legally sufficient to support the court's finding that Vicky knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endangered the children's physical or emotional well-being. *See In re M.V.*, 343 S.W.3d at 547 (evidence of domestic violence between mother and father was sufficient to establish that mother knowingly placed or knowingly allowed child to remain in conditions or surroundings which endangered his physical or emotional well-being thereby supporting termination of mother's parental rights). Further, in view of the entire record, we conclude that the disputed evidence is not so significant as to prevent the trial court from forming a firm belief or conviction that termination was justified under Section 161.001(b)(1)(D). Having determined that the evidence is sufficient to support this finding, it is unnecessary to address whether the evidence also supports the other predicate termination grounds.

*Best Interest*

Vicky also argues that the evidence is legally and factually insufficient to support the best interest finding made under Section 161.001(b)(2) of the Family Code. A determination of best interest necessitates a focus on the child, not the parent. *See In the Interest of B.C.S.*, 479 S.W.3d 918, 927 (Tex.App.--El Paso 2015, no pet.); *In the Interest of R.F.*, 115 S.W.3d 804, 812 (Tex.App.--Dallas 2003, no pet.). There is a strong presumption that it is in the child's best interest to preserve the parent-child relationship. *In re B.C.S.*, 479 S.W.3d at 927. Several factors must be considered in our analysis of the best interest issue: the child's desires; the child's emotional and physical needs now and in the future; the emotional and physical danger to the child now and in the future; the parenting abilities of the individuals seeking custody; the programs available to

assist those individuals to promote the child's best interest; the plans for the child by those individuals or the agency seeking custody; the stability of the home or proposed placement; the parent's acts or omissions that may indicate that the existing parent-child relationship is not a proper one; and any excuse for the parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex.1976) ("the *Holley* factors"). We also must bear in mind that permanence is of paramount importance in considering a child's present and future needs. *In re B.C.S.*, 479 S.W.3d at 927.

We begin by examining the legal sufficiency of the evidence supporting the best interest finding. The first factor is the desires of the children. At the time of trial, O.E.R. was five-years-old and L.F.J. was two-years-old. There is no evidence that either child expressed his or her desires. Evidence that a child is well-cared for by the foster family, is bonded to the foster family, and has spent minimal time in the presence of a parent is relevant to the best interest determination under the desires of the child factor. *See In re R.A.G.*, 545 S.W.3d 645, 653 (Tex.App.--El Paso 2017, no pet.); *In re U.P.*, 105 S.W.3d 222, 230 (Tex.App.--Houston [14th Dist.] 2003, pet. denied). There is evidence that Linda has provided a safe and stable home for both O.E.R. and L.F.J., the children are bonded to her, and are thriving in the placement. The children do not have this same bond with their mother. L.F.J. had spent a large portion of her life under the Department's care. With regard to O.E.R., Vicky admitted during her counseling sessions with Valero that she had detached from O.E.R. following the injury to her daughter. Valero explained that this broken attachment contributed to O.E.R.'s violent behavior and anger issues. This factor weighs in favor of the trial court's best interest finding.

The next two factors are the children's emotional and physical needs now and in the future, and the emotional and physical danger to the children now and in the future. The need for permanence is a paramount consideration for a child's present and future physical and emotional

needs. *In re R.A.G.*, 545 S.W.3d at 653; *In re U.P.*, 105 S.W.3d at 230. It is unclear whether L.F.J. has ongoing medical needs, but O.E.R. will continue to require trauma counseling. As already discussed, the evidence supports the trial court's finding that Vicky knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endangered the children's physical or emotional well-being. A fact finder may infer that past conduct endangering the well-being of a child may recur in the future if the child is returned to the parent. *In re R.A.G.*, 545 S.W.3d at 653; *In re D.L.N.*, 958 S.W.2d 934, 939 (Tex.App.--Waco 1997, pet. denied). Based on the evidence, the trial court could have determined that the second and third factors weigh heavily in support of the best interest finding.

The fourth factor is the parenting abilities of the individuals seeking custody. In reviewing the parenting abilities of a parent, a fact finder can consider the parent's past neglect or past inability to meet the physical and emotional needs of the children. *D.O. v. Texas Department of Human Services*, 851 S.W.2d 351, 356 (Tex.App.--Austin 1993, no writ), *disapproved of on other grounds by In re J.F.C.*, 96 S.W.3d 256 (Tex. 2002). The evidence supports a conclusion that Vicky has poor parenting skills and she failed to protect the children from domestic violence or provide them with a safe home environment. This factor weighs in favor of the best interest finding.

The fifth factor examines the programs available to assist those individuals to promote the child's best interest. The Department developed service plans for each of the parents. Vicky failed to complete trauma counseling or parenting classes because her only day off from work was Tuesday and she claimed that she was required to be in court for her criminal case on Tuesdays. She did not complete the counseling after she stopped working because she could not remember the day on which counseling was scheduled. Vicky admitted she did not have any excuse for not

completing the classes. This factor supports the best interest finding.

We will consider the sixth and seventh factors together. The sixth factor examines the plans for the child by those individuals or the agency seeking custody. The seventh factor is the stability of the home or proposed placement. The fact finder may compare the parent's and the Department's plans for the children and determine whether the plans and expectations of each party are realistic or weak and ill-defined. *D.O.*, 851 S.W.2d at 356. Vicky's plan is for the children to be returned to her care or to be placed with her mother or with one of Vicky's aunts. Vicky's mother was not a viable placement choice because her current husband had sexually abused one of her daughters. Vicky's plan for the children to be returned to her is not realistic in part because she was unemployed and living with her grandparents at the time of trial. The Department recommended that the children remain with Linda because the children are safe and thriving in the placement, and O.E.R. is receiving the trauma counseling he requires. The trial court could have determined that Linda will continue to provide a safe, stable, and nurturing home for the children whereas Vicky's plan is not realistic. The sixth and seventh factors weigh in favor of the best interest finding.

The eighth factor is the parent's acts or omissions that may indicate that the existing parent-child relationship is not a proper one. Vicky exposed the children to a harmful and unstable home environment by repeatedly engaging in relationships with men who engaged in domestic violence against her. Based on this evidence, the trial court could have found that the existing parent-child relationship between Vicky and the children is not a proper one. This factor supports the best interest finding.

Finally, the ninth factor is whether there is any excuse for the parent's acts or omissions. Vicky's brief does not address this factor or offer any excuse for her conduct.

- 14 -

After considering the evidence related to the *Holley* factors, the trial court could have reached a firm conviction that termination of Vicky's parental rights is in the best interest of both children. The sole issue raised by Vicky is overruled. The order terminating Vicky's parental rights to O.E.R. and L.F.J. is affirmed.

**LARRY'S APPEAL**

Larry raises eight issues in his challenge to the order terminating his parental rights to L.F.J. In Issues One and Two, he attacks the legal and factual sufficiency of the evidence supporting the best interest finding. In Issues Three through Eight, he argues that the evidence is legally and factually insufficient to support the trial court's findings on the predicate termination grounds under Section 161.001(b)(1)(D), (E), and (O).

In Issues Five and Six, Larry argues that the evidence is legally and factually insufficient to support termination under Section 161.001(b)(1)(E). The trial court found that Larry engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the child's physical or emotional well-being. The term "conduct," as used in Section 161.001(b)(1)(E), includes both the parent's actions and failures to act. *In re M.J.M.L.*, 31 S.W.3d 347, 351 (Tex.App.--San Antonio 2000, pet. denied). To "endanger" means to expose the child to loss or injury or to jeopardize a child's emotional or physical health. *Texas Department of Human Services v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *In re A.L.*, 545 S.W.3d 138, 146 (Tex.App.-- El Paso 2017, no pet.); *J.S. v. Texas Department of Family and Protective Services*, 511 S.W.3d 145, 159 (Tex.App.--El Paso 2014, no pet.). Conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child. *See A.S. v. Texas Department of Family and Protective Services*, 394 S.W.3d 703, 712 (Tex.App.--El Paso 2012, no pet.); *In re M.R.J.M.*, 280 S.W.3d 494, 503 (Tex.App.--Fort Worth 2009, no pet.). Endanger means

- 15 -

more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, but it is not necessary that the conduct be directed at the child or that the child suffer injury. *In re A.L.*, 545 S.W.3d at 146; *Castaneda v. Texas Department of Protective and Regulatory Services*, 148 S.W.3d 509, 522 (Tex.App.--El Paso 2004, pet. denied).

Under Section 161.001(b)(1)(E), the relevant inquiry is whether evidence exists that the endangerment of the child's physical and emotional well-being was the direct result of the parent's conduct, including acts, omissions, or failures to act. *See In re J.T.G.*, 121 S.W.3d 117, 125 (Tex.App.--Fort Worth 2003, no pet.). Termination under this subsection must be based on more than a single act or omission; the statute requires a voluntary, deliberate, and conscious course of conduct by the parent. *Id.* When determining whether a parent has engaged in an endangering course of conduct, a fact finder may consider the parent's actions and inactions that occurred both before and after the child was born. *See In re J.O.A.*, 283 S.W.3d at 345; *In re B.C.S.*, 479 S.W.3d at 926; *In re S.M.*, 389 S.W.3d 483, 491-92 (Tex.App.--El Paso 2012, no pet.). Scienter is not required for an appellant's own acts under Section 161.001(b)(1)(E), although it is required when a parent places her child with others who engage in endangering acts. *In re U.P.*, 105 S.W.3d at 236. A parent's abusive or violent conduct can produce a home environment that endangers a child's well-being. *In re B.R.*, 822 S.W.2d 103, 106 (Tex.App.--Tyler 1991, writ denied). Domestic violence, lack of self-control, and propensity for violence may be considered as evidence of endangerment. *In re J.I.T.P.*, 99 S.W.3d 841, 845 (Tex.App.--Houston [14th Dist.] 2003, no pet.).

Larry's brief characterizes himself as the "non-offending parent" and ignores the evidence showing that he repeatedly engaged in domestic violence against Vicky. According to Vicky, Larry was both physically and mentally abusive, and he frequently pushed, choked, and yelled at

her.  Larry went so far as to beat Vicky on the night she discovered that she was pregnant with L.F.J.  Even though these acts of violence were committed in O.E.R.'s presence and before L.F.J. was born, the trial court could properly consider Larry's violent course of conduct when determining whether to terminate his parental rights to L.F.J.

Evidence of illegal drug use by a parent and its effect on a parent's life and his ability to parent may establish an endangering course of conduct under Section 161.001(b)(1)(E).  *See In re J.O.A.*, 283 S.W.3d at 346; *In the Interest of K-A.B.M.*, 551 S.W.3d 275, 287 (Tex.App.--El Paso 2018, no pet.); *Walker v. Texas Dept. of Family and Protective Servs.*, 312 S.W.3d 608, 617 (Tex.App.--Houston [14th Dist.] 2009, pet. denied).  Further, evidence that the parent continued to use illegal drugs even though the parent knew his parental rights were in jeopardy is conduct showing a voluntary, deliberate, and conscious course of conduct, which by its nature, endangers a child's well-being.  *See In re M.E.-M.N.*, 342 S.W.3d 254, 263 (Tex.App.--Fort Worth 2011, pet. denied); *Cervantes-Peterson v. Texas Department of Family & Protective Services*, 221 S.W.3d 244, 253-54 (Tex.App.--Houston [1st Dist.] 2006, no pet.).  Larry tested positive for both cocaine and marijuana while the termination case was pending.  Significantly, L.F.J. also tested positive for cocaine which indicated that she had been present when Larry used the cocaine.  We conclude that the evidence, when considered in the light most favorable to the trial court's finding, permits a reasonable fact finder to form a firm belief or conviction that Larry's parental rights should be terminated pursuant to Section 161.001(b)(1)(E) of the Family Code.  *See In re K.-A.B.M.*, 551 S.W.3d at 286-87 (evidence supported finding that father engaged in a course of conduct that endangered the physical or emotional well-being of the children, thus supporting termination of parental rights where evidence showed that father committed criminal acts before and during pendency of termination case, father frequently engaged in physical altercations with mother, and

father admitted smoking marihuana). Further, in view of the entire record, we conclude that the disputed evidence is not so significant as to prevent the trial court from forming a firm belief or conviction that termination was justified under Section 161.001(b)(1)(E). *See In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006)(stating that evidence is factually insufficient if the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that a fact finder could not reasonably have formed a firm belief or conviction). Issues Five and Six are overruled. Having found that the evidence supports termination under Section 161.001(b)(1)(E), it is unnecessary to address Issues Three, Four, Seven and Eight.

*Best Interest*

In Issues One and Two, Larry challenges the legal and factual sufficiency of the evidence supporting the trial court's finding that termination of Larry's parental rights is in the best interest of L.F.J. Although L.F.J. was too young to have expressed her desires regarding termination of Larry's parental rights, she is bonded to her foster mother and is thriving in the placement. Further, L.F.J. has spent only minimal time in Larry's presence. The first *Holley* factor weighs in favor of termination. *See In re U.P.*, 105 S.W.3d at 230.

The next two factors are the children's emotional and physical needs now and in the future, and the emotional and physical danger to the children now and in the future. As determined in our review of Issues Five and Six, the evidence supports the trial court's finding that Larry engaged in conduct that endangered L.F.J.'s physical or emotional well-being. A fact finder may infer that past conduct endangering the well-being of a child may recur in the future if the child is returned to the parent. *In re R.A.G.*, 545 S.W.3d at 653; *In re D.L.N.*, 958 S.W.2d at 939. Based on the evidence, the trial court could have determined that the second and third factors weigh heavily in support of the best interest finding.

We will consider the fourth and fifth *Holley* factors together. The fourth factor is the parenting abilities of the individuals seeking custody while the fifth factor examines the programs available to assist those individuals to promote the child's best interest. Larry has poor parenting skills and he failed to complete the classes required by his service plan to improve those skills. The fourth and fifth *Holley* factors weigh in favor of the best interest finding.

The sixth and seventh factors will also be addressed together. The sixth factor examines the plans for the child by those individuals or the agency seeking custody. The seventh factor is the stability of the home or proposed placement. The fact finder may compare the parent's and the Department's plans for the children and determine whether the plans and expectations of each party are realistic or weak and ill-defined. *D.O.*, 851 S.W.2d at 356. Because Larry failed to attend trial, he did not express any plan for his daughter.[3] The Department recommended that L.F.J. remain with Linda because she is safe and thriving in the placement. The trial court could have determined that Linda will continue to provide a safe, stable, and nurturing home for the children. The sixth and seventh factors weigh heavily in favor of the best interest finding.

The eighth factor is the parent's acts or omissions that may indicate that the existing parent-child relationship is not a proper one. Larry repeatedly engaged in domestic violence against Vicky and thereby exposed any child living in the home to a harmful and unstable home environment. Further, he used illegal drugs in the presence of L.F.J. and while the termination case was pending against him. While L.F.J. was in his care during the case, Larry allowed Vicky to have unsupervised visitation with L.F.J. without the Department's knowledge. Based on this evidence,

---

[3] In his brief, Larry asserts without any citation to the record that he did not attend trial because he was in Arizona at a family funeral. A caseworker, Ruben Rodriguez, testified that Larry told him that he had been in Arizona for a couple of weeks. Larry explained to Rodriguez that he could travel because he had completed his probation and wanted to visit his family. Larry had been on deferred adjudication probation for credit card abuse.

the trial court could have found that the existing parent-child relationship between Larry and L.F.J. is not a proper one. This factor supports the best interest finding.

Finally, the ninth factor is whether there is any excuse for the parent's acts or omissions. Larry argues in his brief that he is the "non-offending parent" and he had made only one mistake and "used some drugs." Larry does not offer any excuse for engaging in domestic violence or using cocaine and marijuana while the termination case was pending. This factor also weighs in favor of the best interest finding.

After considering the evidence related to the *Holley* factors, the trial court could have reached a firm conviction that termination of Larry's parental rights is in L.F.J.'s best interest. Issues One and Two are overruled and the order terminating Larry's parental rights to L.F.J. is affirmed.


March 29, 2019

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, and Palafox, JJ.