

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | |
|---|---|
| § | No. 08-22-00030-CV |
| § | Appeal from the |
| § | 65th District Court |
| IN THE INTEREST OF G.M., A CHILD. § | of El Paso County, Texas |
| § | (TC# 2021DCM0493) |
| § | |
| § | |

**O P I N I O N**

Appellant R.M. ("Mother")[1] appeals a trial court's judgment terminating her parental rights to daughter G.M. Mother contends the evidence is legally and factually insufficient to support the termination of her parental rights.[2] We affirm the judgment of the trial court.

**I.     Background**

The trial court held a final hearing on January 10, 2022. Counsel representing Mother and Father both requested a continuance due to the lack of contact with their clients, which the trial court denied.

Testimony at the final hearing established, in 2019, the Department of Family and

---

[1] We refer to the parties by aliases. *See* TEX.R.APP.P. 9.8(b)(2).

[2] The trial court terminated the Father's rights; however, Father does not appeal the termination.

Protective Services ("Department") became involved in an investigation in which G.M. alleged O.I., Mother's boyfriend, sexually abused her, and whether Mother provided neglectful supervision of G.M. The Department validated the sexual abuse allegations against O.I. and Mother was "ruled out" for neglectful supervision of G.M. After the sexual abuse allegations were validated, Mother assured the Department she would not allow O.I. to have contact with G.M.

On January 26, 2021, the Department became involved yet again in an investigation involving G.M. after police responded to a domestic violence call involving Mother and O.I. O.I. told the responding officer, Officer Cervantes, he called 911 because he and Mother had been arguing since the day before and he wanted her out of the house. Officer Cervantes testified Mother stated she and O.I. were arguing about whether he was being unfaithful. Mother alleged O.I. prevented her from obtaining his cell phone by striking her with a phone charger cord. Mother also claimed O.I. blocked her when she attempted to run into the restroom, and he smashed her hand in the doorway. O.I. was arrested at the scene. When Officer Cervantes ran a warrant check on O.I. and Mother, she discovered O.I. had an outstanding warrant for a sexual assault charge involving Mother's daughter, G.M., and Mother had outstanding traffic warrants. Because Mother was also arrested, a decision was made where G.M. could be placed. Mother mentioned she had a son, but G.M. could not be placed with him because Mother reported G.M. was afraid of him. Due to the circumstances, officers notified the Department. The Department filed its Original Petition and obtained temporary managing conservatorship on January 27, 2021.

Mother's sister, M.L.S., testified her niece, G.M., had been placed with her in Seminole, Texas since June 2021. M.L.S. stated through her conversations and text exchanges with Mother, she learned Mother had been using methamphetamines to lose weight. M.L.S. received Mother's latest admission Mother was using methamphetamines the Friday before the trial. Although

2

Mother told her sister she could stop using methamphetamines at any time, M.L.S. believed Mother was unable to stop.

M.L.S. said she addressed O.I.'s sexual abuse of G.M. with Mother. Mother told her sister, she knew O.I. had "touched [G.M.] down there," however, Mother continued her relationship with O.I. M.L.S. testified even though Mother knew G.M. was not allowed to be in contact with O.I., Mother kept moving G.M. back in with O.I. M.L.S. stated based on Mother's refusal to end her relationship with O.I., she believed G.M. would not be safe living with Mother.

M.L.S. reported G.M. had not visited Mother, Mother had not asked for a visit with G.M., further, G.M. had not expressed any desire to visit Mother. Mother rarely spoke with G.M. via telephone or video calls and their only regular contact was through sporadic texts. M.L.S. also relayed since G.M. began living with her, G.M. was very happy, her grades were better, and she was participating in therapy. M.L.S. explained she and her husband did not have children and were committed to taking care of G.M. M.L.S. testified it was in G.M.'s best interest for Mother's parental rights to be terminated.

Jessica Canales testified she served as the caseworker in Mother's case until November 2021 and was familiar with the services that Mother was asked to complete pursuant to the service plan that Mother signed. Specifically, Mother was asked to participate in parenting classes, complete an outreach, screening, and referral ("OSAR") assessment, participate in substance abuse treatment, submit to random drug testing, participate in domestic violence classes, and visit with G.M. Mother failed to participate or complete the service plan requirements. Mother reported she was unable to participate in the required services because of her ongoing relationship with O.I. According to Mother that relationship involved domestic violence and O.I. did not allow her to participate in services. Ms. Canales testified Mother spoke about O.I. a great deal and he would

take Mother to her visits with G.M.

Mother visited G.M. in person when G.M. was placed in an El Paso foster home. When G.M. was placed with her aunt in Seminole, Texas, Mother was given an opportunity to visit with G.M. virtually daily. Mother often missed the in-person and virtual visits either. Mother stated she was shielding G.M. from Mother's drug withdrawal process, or because she needed to take a nap, or due to Mother's migraine headaches. Eventually, the scheduled video calls were replaced with phone calls and sporadic text messages. During Mother's phone calls with G.M., the Department constantly redirected Mother because she would comment on G.M.'s weight, speak of the situation at home, and ask case-related questions.

Ms. Canales stated during her monthly meetings with Mother, Mother reported she used methamphetamines to lose weight. Mother told Ms. Canales she did not need substance abuse treatment and Mother acknowledged she needed to stop using drugs. Ms. Canales offered Mother housing and travel assistance, but Mother told her that assistance was unnecessary because she had an apartment and a vehicle. Ms. Canales attempted to assess the condition of Mother's apartment and vehicle, but Mother refused. Ms. Canales told Mother discontinuing her relationship with O.I. would be in G.M.'s best interest. Initially, Mother claimed she was unaware of the sexual abuse allegations. Mother expressed anger at O.I. for abusing G.M. and wanted O.I. to be arrested. However, Mother later reported she reunited with O.I. because she was financially dependent on him and he paid for her vehicle.

Ms. Canales stated initially Mother agreed with G.M.'s placement with Mother's sister, but later changed her mind. Ms. Canales believed G.M.'s placement was going very well, as she had an established relationship with her aunt and uncle, continued to have contact with other family members, had made several friends. G.M. continued to have telephone contact with Mother, which

4

was the type of contact that was in G.M.'s current best interest.

Martina Murillo testified she had been the caseworker in Mother's case for the last five months. She was familiar with the service plan Mother had agreed to and testified Mother had not engaged in any of the requested services, which included parenting classes, a psychological evaluation, random drug testing, parenting classes, an OSAR assessment, and a psychological assessment. Mother told Murillo she had not engaged in services because demons were not allowing her to do so. Mother also reported she was still in a relationship with O.I. and she could not leave him because he supported her financially. Ms. Murillo testified she tried to assist Mother with services by offering her transportation assistance and following up with Mother to see how she was doing. Mother told Ms. Murillo she continued to use methamphetamines because she is stressed out and had no intention of stopping. During Murillo's tenure as Mother's caseworker, Mother had no in-person visits with G.M. and her communication with G.M. was only with random texts. Ms. Murillo believed Mother had constructively abandoned G.M., as she failed to visit G.M. and maintain a substantial relationship with her daughter. Ms. Murillo opined Mother's parental rights should be terminated.

On cross-examination, Ms. Murillo stated G.M. lived with her aunt in Seminole, Texas, which was about a four-hour drive from El Paso. She admitted the Department had not brought G.M. to El Paso so she could visit with her Mother.

The Court-Appointed Special Advocate recommended termination of Mother's parental rights because Mother had not complied with any of the services, she had not made efforts to stay in touch with G.M., and G.M. was doing much better in her current placement.

At the conclusion of the final hearing, the trial court issued a judgment terminating Mother's parental rights on Subsections (D), (N), and (O) grounds. However, via an amended order

of termination of parental rights, the trial court removed the Subsection (O) ground and terminated Mother's parent-child relationship with G.M. pursuant to Subsections (D) and (N). Specifically, the trial court found Mother had placed or allowed G.M. to remain in conditions or surroundings that endangered her physical or emotional well-being, and she had constructively abandoned G.M. The trial court also found termination of Mother's parental rights would be in the best interest of G.M. This appeal followed.

## II. Discussion

### A. Standard of Review and Applicable Law

The natural right of a parent to the care, custody, and control of their children is one of constitutional magnitude. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985); *see also Santosky v. Kramer*, 455 U.S. 745, 758-59 (1982)(acknowledging that a parent's rights to "the companionship, care, custody, and management" of their children are constitutional interests, "far more precious than any property right"). However, although parental rights are of constitutional magnitude, they are not absolute. *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002). "Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right." *Id*.

Parental rights may be involuntarily terminated through proceedings brought under Section 161.001 of the Texas Family Code. *See* TEX.FAM.CODE ANN. § 161.001. We review parental rights termination appeals under the clear and convincing evidence standard. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). In applying this standard, "the reviewing court must undertake 'an exacting review of the entire record with a healthy regard for the constitutional interests at stake.'" *In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014).

When reviewing the legal sufficiency of the evidence in a termination case, we consider

all of the evidence in the light most favorable to the trial court's finding, "to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.P.B.*, 180 S.W.3d at 573. [Internal quotation marks omitted]. We give deference to the fact finder's conclusions, indulge every reasonable inference from the evidence in favor of that finding, and presume the fact finder resolved any disputed facts in favor of its findings, so long as a reasonable fact finder could do so. *In re K.A.C.*, 594 S.W.3d 364, 372 (Tex.App.—El Paso 2019, no pet.). We disregard any evidence that a reasonable fact finder could have disbelieved, or found to have been incredible, but we do not disregard undisputed facts. *Id.*

In a factual sufficiency review, the inquiry is whether the evidence is such that a fact finder could reasonably form a firm belief or conviction about the challenged findings. *See In re K.A.C.*, 594 S.W.3d at 372. We must give due consideration to evidence that the fact finder could reasonably have found to be clear and convincing. *Id.* A court of appeals should consider whether disputed evidence is such that a reasonable fact finder could not have resolved that disputed evidence in favor of its finding. *Id.* If the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that a fact finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *Id.*

To obtain termination of parental rights, the petitioner must (1) establish one or more of the statutory acts or omissions enumerated as grounds for termination, and (2) prove that termination is in the best interest of the child. *Id.* at 371. Section 161.001(b)(1) of the Texas Family Code sets out the list of predicates for terminating parental rights. *See* TEX.FAM.CODE ANN. § 161.001(b)(1)(D). Although the existence of one predicate ground is sufficient to uphold the termination of parental rights on appeal, the court of appeals must still always review the sufficiency of any findings made under Subsections (D) or (E) as part of due process, since those

7

findings can affect a parent's right to be a parent to their other children. *See In re N.G.*, 577 S.W.3d 230, 237 (Tex. 2019).

**B. Analysis**

On appeal, Mother challenges the legal and factually sufficiency of the evidence supporting the trial court's findings on the predicate termination grounds under Sections 161.001(b)(1)(D) and 161.001(b)(1)(N).

*1. Endangerment*

We begin by considering whether the evidence is legally and factually sufficient to support termination of Mother's parental rights under Section 161.001(b)(1)(D). A parent's rights may be terminated if there is clear and convincing evidence that the parent has knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child. *See* TEX.FAM.CODE ANN. § 161.001(b)(1)(D). "Endanger" means to expose a child to loss or injury; or to jeopardize a child's emotional or physical health. *See In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996). Subsection (D) addresses the child's surroundings and environment before the child was removed from the home. *In re S.R.*, 452 S.W.3d 351, 360 (Tex.App.—Houston [14th Dist.] 2014, pet. denied). In this context, the child's environment refers to the suitability of the child's living conditions as well as the conduct of parents or others in the home. *Id*.

A child is endangered when the environment creates a potential for danger that the parent is aware of but disregards. *In re E.R.W.*, 528 S.W.3d 251, 264 (Tex.App.—Houston [14th Dist.] 2017, no pet.). Sexual abuse is conduct that endangers a child's physical or emotional well-being. *In re E.A.G.*, 373 S.W.3d 129, 143 (Tex.App.—San Antonio 2012, pet. denied). Domestic violence and a propensity for violence may be considered evidence of endangerment, even if the

endangering acts did not occur in the child's presence, were not directed at the child, or did not cause actual injury to the child. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *In re D.J.C.*, No. 04-16-00564-CV, 2016 WL 7379248, at *6 (Tex.App.—San Antonio Dec. 21, 2016, no pet.)(mem. op.). A parent's decision to continue living with someone who has committed instances of domestic violence may support an endangerment finding under Subsection (b)(1)(D). *See In re M.V.,* 343 S.W.3d 543, 547 (Tex.App.—Dallas 2011, no pet.). Likewise, a mother's act of allowing her boyfriend back into her home after her daughters reported that he sexually abused them may also be considered evidence of endangerment. *See In re T.M.*, No. 07-20-00134-CV, 2020 WL 5507826, at *5 (Tex.App.—Amarillo Sept. 11, 2020, pet. denied)(mem. op.).

Here, the evidence established that Mother was involved in a physically abusive relationship with O.I. The Department became involved in the case after police responded to a domestic violence call involving Mother and O.I., where Mother reported that O.I. struck her with a cord and smashed her hand in the doorway. Officer Cervantes stated that G.M. was present at the scene and appeared to be frightened. Officer Cervantes did not know if G.M. was present when the reported incident occurred but said that both Mother and O.I. claimed that they had been arguing since the previous day. Also significant, Mother told her caseworker that her relationship with O.I. involved domestic violence and that she was unable to complete the requested services because O.I. would not allow her to do so. Based on this evidence of domestic violence, the trial court could have formed a firm belief that Mother exposed G.M. to an unstable environment and that due to Mother's statements regarding the domestic abuse and her financial dependence on O.I., there was no chance that Mother would remove herself from the abusive situation in order to protect G.M. *See In re O.E.R.,* 573 S.W.3d 896, 906 (Tex.App.—El Paso 2019, no pet.)(parent's

choice to continue relationship with violent or abusive partners can create an endangering environment for children).

In addition to the unstable and unpredictable environment that resulted from the domestic violence, there was also evidence that Mother continued her relationship with O.I. after G.M. reported that he sexually abused her, and the allegations were validated. On appeal, Mother emphasizes that the previous investigation involving O.I.'s sexual abuse of G.M. concluded that she did not commit neglect or abuse. However, after the allegations against O.I. were validated, Mother assured the Department that she would not allow O.I. to have contact with G.M., which she failed to do. The evidence showed that O.I. continued to have contact with G.M., as G.M. was present when the police responded to the domestic abuse call that led to O.I.'s arrest on an outstanding warrant for a sexual assault charge involving G.M. Additionally, Mother's sister, M.L.S., stated that she addressed the sexual abuse outcry with Mother and that Mother was aware that O.I. had "touched [G.M.] down there." However, Mother told her that despite the allegations, she would continue to be in a relationship with O.I. M.L.S. also testified that she believed that Mother failed to protect G.M. because she kept moving G.M. into O.I.'s home. Based on the foregoing, the trial court could have reasonably formed a firm conviction that Mother knowingly placed G.M. in conditions or surroundings which endangered G.M.'s physical or emotional well-being. *See In re T.M.*, 2020 WL 5507826, at *5-6 (evidence that mother exposed her daughters to the potential of continuing sexual abuse by allowing her boyfriend back into her home after he had committed sexual offenses against her daughters supported the trial court's conclusion that the children's surroundings endangered their physical or emotional well-being).

Finally, testimony established that Mother admitted to using methamphetamine and that she was not interested in obtaining treatment because she did not believe that she needed to stop.

10

A parent's illegal drug use and its effect on parenting ability may support the conclusion that a child's surroundings endanger her physical or emotional well-being. *See In re J.T.G.*, 121 S.W.3d 117, 125 (Tex.App.—Fort Worth 2003, no pet.).

After considering the evidence in the light most favorable to the trial court's finding, we conclude the evidence is legally sufficient to support the trial court's finding that Mother knowingly placed or knowingly allowed G.M. to remain in conditions or surroundings which endangered G.M.'s physical or emotional well-being. *See In re E.A.G.*, 373 S.W.3d at 143 ("Sexual abuse is conduct that endangers a child's physical or emotional well-being."); *In re M.V.*, 343 S.W.3d at 547 (evidence of domestic violence between mother and father was sufficient to establish that mother knowingly placed or knowingly allowed child to remain in conditions or surroundings which endangered his physical or emotional well-being thereby supporting termination of mother's parental rights). Further, in view of the entire record, we conclude that the disputed evidence is not so significant as to prevent the trial court from forming a firm belief or conviction that termination was justified under Section 161.001(b)(1)(D). Having determined that the evidence is sufficient to support this finding, it is unnecessary to address Mother's remaining issue that attacks the trial court's decision to also terminate her parental rights under the Section 161.001(b)(1)(N) predicate ground.

*2. Best interest of the child*

The existence of a predicate termination ground is not enough to allow a trial court to order termination of parental rights; termination of parental rights must also be in the child's best interest. *See In re B.C.S.*, 479 S.W.3d 918, 923 (Tex.App.—El Paso 2015, no pet.). A determination of best interest necessitates a focus on the child, not the parent. *See id.* at 927. There is a strong presumption that it is in the child's best interest to preserve the parent-child relationship, but that

11

presumption may be rebutted. *Id.* Nine non-exhaustive factors should be considered in our analysis of the best interest issue: the child's desires; the child's emotional and physical needs now and in the future; the emotional and physical danger to the child now and in the future; the parenting abilities of the individuals seeking custody; the programs available to assist those individuals to promote the child's best interest; the plans for the child by those individuals or the agency seeking custody; the stability of the home or proposed placement; the parent's acts or omissions that may indicate that the existing parent-child relationship is not a proper one; and any excuse for the parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976)(the *Holley* factors).

The Department is not required to prove all the Holley factors as a condition precedent to parental-rights termination. *See In re C.H.*, 89 S.W.3d at 27. We also must bear in mind that permanence is of paramount importance in considering a child's present and future needs. *In re B.C.S.*, 479 S.W.3d at 927. While no one factor is controlling, analysis of a single factor may be adequate in a particular factual situation to support a finding that termination is in the best interest of the child. *In re J.O.C.*, 47 S.W.3d 108, 115 (Tex.App.—Waco 2001, no pet.), *disappr'd on other grounds by In re J.F.C.*, 96 S.W.3d 256 (Tex. 2002).

a.  The Child's Desires

We begin with the child's desires. In this case, G.M. was eleven years' old at the time of the hearing and was old enough to be able to voice her desires as to placement. While G.M. did not testify directly, the record reflects that G.M.'s maternal aunt, M.L.S., has provided a loving and stable environment for her, she is doing well physically and emotionally, and she did not wish to have contact with her Mother. Additionally, although Mother was allowed daily telephone visits with G.M., Mother chose to have limited contact with her. The evidence related to this factor weighs in favor of the trial court's best interest finding. *See In re R.A.G.*, 545 S.W.3d 645, 653

12

(Tex.App.—El Paso 2017, no pet.)("Evidence that a child is well-cared for by his foster family, is bonded to his foster family, and has spent minimal time in the presence of a parent is relevant to the best interest determination under the desires of the child factor.").

b. <u>The Child's Emotional and Physical Needs / Emotional and Physical Danger to the Children/ Parental Acts or Omissions Indicating Existing Parent-Child Relationship is not a Proper One / Excuses for Parent's Acts or Omissions</u>

As previously discussed, the evidence supports the trial court's finding that Mother knowingly placed or knowingly allowed G.M. to remain in conditions or surroundings which endangered G.M.'s physical or emotional well-being. A fact finder may infer that past conduct endangering the well-being of a child may recur in the future if the child is returned to the parent. *In re R.A.G.*, 545 S.W.3d at 653. The record reflects that Mother continued to have a relationship with O.I. after the Department validated O.I.'s sexual abuse of G.M. in 2019. There was evidence that Mother and O.I.'s relationship was characterized by domestic violence. Mother also told her caseworker that she was dependent on O.I.'s support and would continue to have a relationship with O.I. Based on this evidence, the trial court could have determined that Mother would not end her relationship with O.I. and that returning G.M. to Mother would pose a present and future emotional and physical danger to G.M.

The record also reflects that during the Department's investigation, Mother prevented the Department from assessing the condition of her home and vehicle. The trial court could have inferred that Mother's resistance to allowing the Department to assess her home and vehicle indicated that there was adverse information she did not want the Department to discover. *In re D.M.D.*, 363 S.W.3d 916, 926 (Tex.App.—Houston [14th Dist.] 2012, no pet.)(considering among other acts and omissions, parents' refusal to cooperate with the Department as evidence that termination was in the child's best interest).

13

Mother raised some excuses for her acts or omissions, such as not being able to visit with G.M. because she did not want G.M. to observe her while she was going through drug withdrawal. Mother told her caseworker that she would visit with G.M. after she resolved her drug withdrawal problems. However, there is no evidence that Mother sought help for her substance abuse issues or that she took advantage of the substance abuse treatment that was part of her service plan. The trial court could have found that Mother's reported use of methamphetamines signified an inability to provide stability and supported the inference that this behavior would continue into the future.

These factors weigh in favor of termination.

c. Parenting abilities

In reviewing the parenting abilities of a parent, a fact finder can consider the parent's past neglect or past inability to meet the physical and emotional needs of the children. *In re O.E.R.*, 573 S.W.3d at 907-08. The evidence supports the trial court's finding that Mother has poor parenting skills, as she failed to keep O.I. away from G.M. and exposed G.M. to an abusive household. Additionally, Mother chose to have infrequent contact with G.M. despite having the opportunity to visit with her on a daily basis, which showed Mother's indifference towards maintaining a strong parent-child relationship with G.M. *See In re R.S.*, No. 01-20-00126-CV, 2020 WL 4289978, at *9 (Tex.App.—Houston [1st Dist.] July 28, 2020, no pet.)(mem. op.)(parent's failure to visit with child on a regular basis was circumstance from which fact finder could conclude that parent was unwilling or unable to fulfill child's most basic emotional and physical needs). This factor weighs in favor of the best interest finding.

d. Programs available to assist those individuals to promote the child's best interest

The Department developed a service plan for Mother that she agreed to comply with. The evidence showed that Mother made no effort to complete any of the services in her service plan.

14

At first, Mother claimed that O.I. would not allow her to participate in any of the services and then later, she stated that demons prevented her from doing so. Because Mother did not have a valid excuse for completing the services, this factor supports the best interest finding.

e.  Plans for the Child / Stability of the Home of Proposed Placement

The fact finder may compare the parent's and the Department's plans for the child and determine whether the plans and expectations of each party are realistic or weak and ill-defined. *In re O.E.R.*, 573 S.W.3d at 908. The testimony established that Mother had no long-term plans for G.M. Mother's focus was on O.I. and her relationship with him. The Department recommended that G.M. remain with M.L.S. because G.M. had an established relationship with M.L.S. and her husband, continued to have contact with other family members, and was participating in therapy. M.L.S. testified that G.M. was happy living with her and that she and her husband were committed to taking care of G.M. The trial court could have determined that G.M. would continue to thrive in M.L.S.'s safe, stable, and nurturing home whereas Mother had no plan in place. These factors weigh in favor of the best interest finding.

After considering the entire record, we find that the trial court's finding that termination is in the child's best interest is supported by legally and factually sufficient evidence.

## III. Conclusion

The evidence was legally and factually sufficient to support the trial court's termination order. Accordingly, Issues One and Two are overruled and the judgment of the trial court is affirmed.

June 21, 2022

YVONNE T. RODRIGUEZ, Chief Justice

Before Rodriguez, C.J., Palafox, and Alley, JJ.