Fourth Court of Appeals
San Antonio, Texas



## MEMORANDUM OPINION

No. 04-20-00158-CV

**IN THE INTEREST OF R.G.F.**, a Child

From the 73rd Judicial District Court, Bexar County, Texas
Trial Court No. 2019-PA-01216
Honorable Richard Garcia, Judge Presiding

Opinion by:     Luz Elena D. Chapa, Justice

Sitting:          Sandee Bryan Marion, Chief Justice
                  Luz Elena D. Chapa, Justice
                  Liza A. Rodriguez, Justice

Delivered and Filed: October 28, 2020

AFFIRMED

J.F.[1] appeals the trial court's order, rendered after a bench trial, that terminated the parent-child relationship between J.F. and R.G.F. We conclude the evidence is legally and factually sufficient to support the trial court's findings that J.F. endangered R.G.F.'s physical or emotional well-being and that termination is in the child's best interest, and we affirm the trial court's order.

### BACKGROUND

Shortly after R.G.F. was born on June 2, 2019, the hospital contacted the Department of Family and Protective Services because R.G.F.'s mother, R.G., tested positive for methadone. R.G.F. later tested positive for methadone, amphetamines, and methamphetamines. She

---

[1]To protect the identity of the minor child, we refer to the parents and the child by their initials. *See* TEX. FAM. CODE § 109.002(d); TEX. R. APP. P. 9.8(b)(2).

experienced withdrawal symptoms and remained in the hospital for one month. The Department filed an original petition for emergency removal, conservatorship, and termination of parental rights on June 14, 2019, after the baby's father, J.F., threatened hospital staff if they did not allow R.G.F. to leave with him.

The case was tried on February 21, 2020. Although J.F. appeared at hearings throughout the case, he did not appear at trial. His attorney ad litem advised the court she had not had any contact with him since before the previous hearing, and "the previous contact information is no longer good for him." The Department's caseworker testified J.F. called her the week before trial and he was aware of the court date.

At the beginning of the trial, R.G. tendered an affidavit of voluntary relinquishment of her parental rights. The trial court heard testimony from the Department's caseworker and R.G., and admitted J.F.'s service plan into evidence. At the conclusion of trial, the court found by clear and convincing evidence that J.F. engaged in conduct or knowingly placed R.G.F. with a person who engaged in conduct that endangers her physical or emotional well-being. *See* TEX. FAM. CODE § 161.001(b)(1)(E). The trial court also found that termination of J.F.'s parental rights is in R.G.F.'s best interest. *See id.* § 161.001(b)(2). The court terminated both parents' rights and named the Department R.G.F.'s permanent managing conservator. J.F. timely filed a notice of appeal.

## STANDARD OF REVIEW

To terminate parental rights, a trial court must find by clear and convincing evidence one of the statutory predicate grounds and that termination is in the child's best interest. TEX. FAM. CODE § 161.001(b). J.F. challenges the legal and factual sufficiency of the evidence to support both of the findings. We review the trial court's findings in accordance with the standards set out in *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002).

### SECTION 161.001(b)(1)(E) ENDANGERMENT

In his first issue, J.F. argues the evidence is insufficient to support the trial court's finding that he engaged in conduct or knowingly placed R.G.F. with a person who engaged in conduct that endangers her physical or emotional well-being. *See* TEX. FAM. CODE § 161.001(b)(1)(E). J.F. argues no evidence supports the finding because he was not aware of the mother's drug use and there was no evidence he engaged in any endangering conduct in the child's presence. The Department contends evidence of J.F.'s displays of uncontrolled anger, threats of violence, and assault, together with his failure to complete services intended to address those issues, demonstrate an endangering course of conduct.

To "endanger" means to expose the child to loss or injury or to jeopardize a child's emotional or physical health. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). Termination based on parental conduct under section 161.001(b)(1)(E) must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required. *In re J.W.*, 152 S.W.3d 200, 205 (Tex. App.—Dallas 2004, pet. denied). The course of conduct may include both the parent's actions and failures to act. *In re M.J.M.L.*, 31 S.W.3d 347, 351 (Tex. App.—San Antonio 2000, pet. denied). Scienter is not required for a parent's own acts or omissions; proof of the parent's knowledge is required only when the allegation is that the parent placed the child with others who endangered the child. *In re K.J.G.*, No. 04-19-00102-CV, 2019 WL 3937278, at *4 (Tex. App.—San Antonio Aug. 21, 2019, pet. denied) (mem. op.).

The Department is not required to prove the parent directed the endangering conduct at the child, that it was done in the presence of the child, or that the parent caused an actual injury or threat of injury to the child. *Boyd*, 727 S.W.2d at 534; *Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied); *M.J.M.L.*, 31

S.W.3d at 351. The danger to the child's well-being may be inferred from the nature of the parent's misconduct alone. *Boyd*, 727 S.W.2d at 534. Thus, in considering whether a course of conduct that endangers the child's physical or emotional well-being has been established, the court may consider evidence of the parent's conduct both before and after the child's birth, including conduct occurring after the child was removed from the parent's care. *K.J.G.*, 2019 WL 3937278, at *4; *Walker*, 312 S.W.3d at 617. "Domestic violence, want of self-control, and propensity for violence may be considered as evidence of endangerment." *In re R.S.-T.*, 522 S.W.3d 92, 110 (Tex. App.— San Antonio 2017, no pet.) (quoting *In re J.I.T.P.*, 99 S.W.3d 841, 845 (Tex. App.—Houston [14th Dist.] 2003, no pet.)).

The Department's caseworker, Jenny De La Garza, testified R.G.F. was removed from her parents because of their drug use and because of J.F.'s uncontrolled temper and assaultive conduct. R.G. testified she was on methadone throughout her pregnancy and that methadone, methamphetamines, and amphetamines were found in R.G.F.'s system. According to R.G., she and J.F. had an "on and off" relationship and were "together" about a month altogether during her pregnancy, but were not "together" when R.G.F. was born. She testified J.F. did not know she was using drugs. De la Garza testified J.F. told her he was not aware of R.G.'s drug use. J.F. completed a drug assessment and was not recommended for further drug-related services.

Caseworker De La Garza testified her other main concern for R.G.F.'s safety derived from J.F.'s inability to control his anger. R.G. testified J.F. "has an anger problem," he "lashes out," and "can't control himself." Staff at the hospital told the Department investigator J.F. was heard yelling at R.G. in the NICU unit on multiple occasions. R.G. testified that on one occasion, J.F. became angry at the investigator who was at the hospital explaining what was going to happen, and J.F. threatened to slap him. De la Garza testified J.F. was ultimately banned from the hospital after

arguing with hospital staff because he wanted to leave with R.G.F. and was not allowed to do so. She testified J.F. threatened the staff that he would return with a gun to take the baby.

J.F.'s violent behavior continued after R.G.F. was removed and placed in foster care. De la Garza testified about an occasion when a man dropped R.G. off at the Department for an appointment. She stated this caused J.F. to begin "screaming obscenities" and "causing a big old scene." And R.G. testified that just two days before trial, J.F. punched her in the face.

The Department's Family Plan for J.F., which J.F. reviewed and signed, was admitted into evidence. The Plan recites the Department's concern that J.F.'s violent and inappropriate behavior put R.G.F. at risk of injury. Thus the Plan required J.F. to participate in a domestic violence prevention program, submit to a complete psychological evaluation and follow all the evaluator's recommendations, and to participate in individual counseling to address the issues that caused the removal of his child. De la Garza testified J.F. did not complete any of these services.

The evidence established J.F. was abusive to and threatened R.G., a Department employee, and hospital staff, and he physically assaulted R.G. It fully supported R.G.'s testimony that J.F. has an "anger problem" and has difficulty controlling himself. Such conduct exposes a child to injury and poses a risk to the well-being of a child, even if the past conduct did not occur in the child's presence. *See In re O.E.R.*, 573 S.W.3d 896, 909 (Tex. App.—2019, El Paso, no pet); *R.S.-T.*, 522 S.W.3d at 110. Although the Department made services available to J.F. to help him to address the issue and thus reduce the risk to R.G.F., he failed to avail himself of them. We conclude the evidence is both legally and factually sufficient to support a finding that J.F.'s lack of self-control and violent and abusive conduct endangered R.G.F.'s physical and emotional well-being. *See J.F.C.*, 96 S.W.3d at 263–67.

**BEST INTEREST OF THE CHILD**

J.F.'s second issue challenges the trial court's finding that termination of his rights is in R.G.F.'s best interest. In determining the best interest of a child, courts consider the factors enumerated by the Texas Supreme Court in *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976): (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. This list of factors is not exhaustive, and not every factor must be proven for a court to find that termination is in the child's best interest. *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). "Evidence of only one factor may be sufficient to support the best interest finding, especially if the evidence shows the parental relationship endangered the child's safety." *Id.*

The Family Plan J.F. reviewed and signed states the principal issues J.F. needed to address were concerns for R.G.F.'s safety arising from J.F. being under the influence of alcohol or illegal substances, engaging in violent and inappropriate behavior, making poor relationship choices, and being unable to provide for R.G.F.'s basic needs. To address these concerns, the Department made services available to J.F., which he was required to complete. The Plan required J.F., who was a first-time father, to actively participate in and complete parenting classes and a domestic violence program. J.F. was required to submit to a drug assessment and a psychological evaluation, and to follow all recommendations made by the evaluators. And the Plan required J.F. to participate in individual counseling to address the issues that caused the removal of his child. The Plan provided

specific instructions on how to engage each of these services, including the names, addresses and telephone numbers of the providers. The Plan stated it was J.F.'s responsibility to contact and schedule the services.

Caseworker De la Garza testified the only one of these services J.F. completed in the seven months after he signed the Plan was the drug assessment (no treatment was recommended). When asked whether J.F. gave her any reason for failing to complete the other services, she testified "he would say that it was due to transportation, or work, or the weather and his living circumstances."

In order to show J.F. could financially support R.G.F. and provide her a safe and stable environment, the Plan required J.F. to obtain legal employment or proof of disability and to maintain safe and appropriate housing. De la Garza testified that at the time of trial, J.F. sometimes stayed at his brother's house, but was essentially homeless. She testified J.F. told her his income came from doing odd jobs and cutting hair, but she was unable to verify any income. R.G. confirmed that J.R. had not had a home in a long time and did not have a job. The evidence thus showed J.F. is not able to provide R.G.F. a safe and stable environment or even provide for her basic needs.

J.F. and R.G. were permitted weekly, one-hour supervised visits with R.G.F. at the Department while the case was pending. De la Garza testified J.F. regularly attended the visits, and his last visit had been two weeks before trial. Both De la Garza and R.G. testified J.F. was "appropriate" with R.G.F. during the visits. No evidence was presented regarding J.F.'s parenting skills; however, he was a first-time parent and failed to complete parenting classes.

De la Garza testified R.G.F. had been living with the same family since she left the hospital. The family had previously adopted three of R.G.'s other children, and De la Garza testified R.G.F. was doing very well in the placement and meeting all of her milestones. She further testified the family is meeting all of R.G.F.'s needs and they have bonded with each other. The parents would

like to adopt R.G.F. and were in the process of becoming licensed at the time of trial. Both De la Garza and R.G. testified R.G.F. is very happy living with the family.

R.G.F. was eight months old at the time of the trial. Although she was too young to express her desires, the evidence established she was in a good home, thriving, and had bonded with the family that includes three of her half-brothers and plans to adopt her. When a child is too young to express her desires, the trial court may consider whether the child has bonded with her current caregivers, is well cared for by them, and has spent minimal time with the parent. *See In re D.A.B.*, No. 04-19-00629-CV, 2020 WL 1036433, at *7 (Tex. App.—San Antonio Mar. 4, 2020, no pet.) (mem. op.). Although J.F. regularly visited R.G.F. and was "appropriate" in his visits with the baby, there was no evidence of a bond between them.

The evidence offered in support of the finding that J.F. endangered R.G.F.'s emotional or physical well-being is also probative on the issue of R.G.F.'s best interest. *See C.H.*, 89 S.W.3d at 28. Although the mere fact an act occurred in the past does not necessarily establish termination is currently in the child's best interest, the factfinder may look to a parent's past conduct as a measure of his future conduct. *In re O.N.H.*, 401 S.W.3d 681, 684 (Tex. App.—San Antonio 2013, no pet.). The evidence established J.F. has unresolved and untreated anger issues that cause him to lash out verbally and physically. He did not avail himself of the services provided to help him resolve those issues, and R.G. testified he physically assaulted her just two days before trial. All of which supports a finding that J.F. continued to pose an emotional or physical danger to R.G.F. and that termination of his rights is in R.G.F.'s best interest.

Considering the evidence admitted at trial, we hold legally and factually sufficient evidence supports the trial court's best-interest finding. *See J.F.C.*, 96 S.W.3d at 263–67; *Holley*, 544 S.W.2d at 371–72.

## CONCLUSION

We affirm the trial court's order of termination.

Luz Elena D. Chapa, Justice