

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-22-00074-CV

**IN THE INTEREST OF P.Y.-R.A. AND P.R.W.-D.,** Children

From the 438th Judicial District Court, Bexar County, Texas
Trial Court No. 2020PA02289
Honorable Kimberly Burley, Judge Presiding

Opinion by:      Beth Watkins, Justice

Sitting:            Patricia O. Alvarez, Justice
                      Irene Rios, Justice
                      Beth Watkins, Justice

Delivered and Filed: May 25, 2022

AFFIRMED

J.W. appeals the trial court's order terminating her parental rights to her children P.Y.-R.A. (born 2012) and P.R.W.-D. (born 2016).[1] J.W. argues the evidence is legally and factually insufficient to support the trial court's finding that termination is in the best interest of the children. We affirm the trial court's termination order.

### BACKGROUND

On November 12, 2020, the Texas Department of Family and Protective Services filed a petition to remove the children from J.W.'s care after it became concerned that J.W. was using drugs, was living with the children in a hazardous environment, and had a continuing history of

---

[1] To protect the privacy of the minor children, we use initials to refer to the children and their biological parents. TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b)(2).

domestic violence with G.D., the father of P.R.W.-D. with whom she lived. The Department had been involved with J.W. and her children for several years; the children were living with a maternal aunt and uncle when the Department filed its petition. After the Department became temporary managing conservator of the children, it created a family service plan for J.W. The Department ultimately pursued termination of J.W.'s parental rights.

Eleven months after the Department filed its petition, the trial court held a one-day bench trial at which J.W. appeared through counsel. The trial court heard testimony from the Department's legal caseworker. At the conclusion of trial, the court signed an order terminating J.W.'s parental rights pursuant to section 161.001(b)(1)(N) and (O) and its finding that termination of J.W.'s parental rights was in the best interest of the children. J.W. appealed.[2]

## ANALYSIS

In a single issue on appeal, J.W. challenges the legal and factual sufficiency of the evidence supporting the trial court's finding that termination was in the best interest of the children.

### *Applicable Law and Standard of Review*

The involuntary termination of a natural parent's rights implicates fundamental constitutional rights and "divests the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child's right to inherit from the parent." *In re S.J.R.-Z.*, 537 S.W.3d 677, 683 (Tex. App.—San Antonio 2017, pet. denied) (internal quotation marks omitted). "As a result, appellate courts must strictly scrutinize involuntary termination proceedings in favor of the parent." *Id.* The Department had the burden to prove, by clear and convincing evidence, both that a statutory ground existed to terminate J.W.'s parental rights and that termination was in the best interest of the children. TEX. FAM. CODE ANN. §§ 161.001(b),

---

[2] The trial court also terminated the parental rights of G.D., the father of P.R.W.-D. His interests are not at issue in this appeal.

161.206; *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007; *In re S.J.R.-Z.*, 537 S.W.3d at 683.

When reviewing the sufficiency of the evidence supporting a trial court's termination order, we apply well-established standards of review. *See In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). In reviewing the legal sufficiency, we look "at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *Id.* at 266. In reviewing the factual sufficiency, we consider disputed or conflicting evidence. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.* (quoting *In re J.F.C.*, 96 S.W.3d at 266). The factfinder is the sole judge of the weight and credibility of the evidence. *Id.* at 346.

### Best Interest

*Applicable Law*

There is a strong presumption that a child's best interest is served by maintaining the relationship between a child and the natural parent, and the Department has the burden to rebut that presumption by clear and convincing evidence. *See, e.g.*, *In re R.S.-T.*, 522 S.W.3d 92, 97 (Tex. App.—San Antonio 2017, no pet.). To determine whether the Department satisfied this burden, the Texas Legislature has provided several factors[3] for courts to consider regarding a

---

[3] These factors include, inter alia: "(1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the department; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological,

parent's willingness and ability to provide a child with a safe environment; the Texas Supreme Court has used a similar list of factors[4] to determine a child's best interest. TEX. FAM. CODE ANN. § 263.307(b); *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

A best interest finding, however, does not require proof of any particular factors. *See In re G.C.D.*, No. 04-14-00769-CV, 2015 WL 1938435, at *5 (Tex. App.—San Antonio Apr. 29, 2015, no pet.) (mem. op.). Neither the statutory factors nor the *Holley* factors are exhaustive, and "[e]vidence of a single factor may be sufficient for a factfinder to form a reasonable belief or conviction that termination is in the child's best interest." *In re J.B.-F.*, No. 04-18-00181-CV, 2018 WL 3551208, at *3 (Tex. App.—San Antonio July 25, 2018, pet. denied) (mem. op.). Additionally, evidence that proves a statutory ground for termination is probative on the issue of best interest. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002). Finally, in determining whether termination of the parent-child relationship is in the best interest of a child, a factfinder may judge a parent's future conduct by her past conduct. *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied).

---

or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills [. . .]; and (13) whether an adequate social support system consisting of an extended family and friends is available to the child." TEX. FAM. CODE § 263.307(b).

[4] Those factors include: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist those individuals to promote the best interest of the child; (6) the plans for the child by these individuals or the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

*Application*

On appeal, J.W. claims the trial court did not find that she had abused or neglected the children. She argues there is no evidence the children fear her in any way or that the existing parent-child relationship is not a proper one. She contends her bond with her children was witnessed by the Department's caseworker. Furthermore, J.W. claims there is no evidence she is unable or unwilling to meet the children's physical and emotional needs. She points to evidence that she was employed, had stable housing, and had secured her own transportation by the time of trial, demonstrating she can provide a stable home for the children. She argues there is insufficient evidence concerning the ability of the current caregivers—the maternal aunt and uncle—to meet the children's physical and emotional needs into the future.

At trial, the Department presented evidence that it received a referral about the family when: two-year-old P.R.W.-D. was outside on a cold day in only a diaper; there was no electricity, running water, or food in the home; and rodents and bugs were present in the home. *See* TEX. FAM. CODE § 263.307(a) (considering prompt and permanent placement in a safe environment in child's best interest). The caseworker testified that the Department created a family service plan requiring J.W. to, inter alia, undergo individual counseling and drug treatment, complete domestic violence and parenting classes, and obtain stable employment and housing as a condition of reunification. The caseworker testified that she reviewed the family service plan with J.W., who signed it. The caseworker also testified J.W. did not complete her services.

Specifically, the caseworker stated that J.W. had not consistently visited the children—she had two in-person visits available per month, but she had only attended eight out of eighteen visits. She arrived up to an hour late for some of those visits. At times, the caseworker needed to redirect some topics of conversation, but overall, the visits went well, with "lots of playing with the children . . . bonding through games or running around, playing on the playground, things of that

nature." The caseworker relayed J.W.'s explanation that transportation problems prevented her from attending the remaining visits, but that she fixed her car two weeks before trial. *See In re R.B.*, 200 S.W.3d 311, 316 (Tex. App.—Dallas 2006, pet. denied) (indicating that parent missing and arriving late to visits are acts or omissions indicating termination is in child's best interest).

The caseworker also testified that although J.W. had not been employed throughout the case, once she fixed her car, she was able to work and had been working for about two weeks at the time of trial. *See In re K.J.G.*, No. 04-19-00102-CV, 2019 WL 3937278, at *8 (Tex. App.—San Antonio Aug. 21, 2019, pet. denied) (mem. op.) (considering parent's failure to obtain and maintain stable housing and employment as a factor in support of finding that termination was in the best interest of the children because parent's conduct subjected the children to a life of uncertainty and instability). She credited J.W. for maintaining contact with the Department during the case.

"Physical violence in the home leads to an unstable and unpredictable environment for children." *In re O.E.R.*, 573 S.W.3d 896, 905 (Tex. App.—El Paso 2019, no pet.). Here, the caseworker also explained that J.W. is currently in a relationship with—and living with—G.D., the father of P.R.W.-D. She described the history of domestic violence between J.W. and G.D. The caseworker testified G.D. was recently put on probation for family violence assault "[a]nd he's previously had a family-violence-type case where he ended up going to TDC as well." A family service plan, which was offered as an exhibit at trial and admitted as evidence without objection, substantiated the Department's concerns about domestic violence. That plan detailed how, at a family birthday party, J.W. reported engaging in a physical altercation with G.D. J.W. explained that at the party, G.D. became upset with her, "kicked the windshield," and "smacked his thigh with her hand." He "kept provoking her so she grabbed a machete. She stated that she had hit him several times with the machete, she stated she used the flat side not the blade side." *See* TEX. FAM.

CODE § 263.307(b)(7) (considering history of abusive or assaultive conduct by the child's family or others who have access to the child's home in best interest evaluation). Despite a requirement of completing a domestic violence class, J.W. had not registered. *See id.* § 263.307(b)(10), (11) (considering willingness and ability of family members to complete counseling services and to effect positive environmental and personal changes).

In addition, drug use can destabilize the home and expose children to physical and emotional harm if not resolved. *See, e.g., In re K.J.G.*, 2019 WL 3937278, at *8. At trial, the caseworker testified that the case started as a family-based case but was transferred to a legal case after J.W. tested positive for methamphetamine. The caseworker explained that J.W. submitted a drug test the month before trial and the Department had no concerns about the results. But J.W. only submitted four of the thirteen drug tests the Department sent her to. A family service plan, admitted as evidence without objection, contained evidence that J.W. had tested positive for drugs and had admitted to using marijuana and methamphetamine during the case. Furthermore, J.W. did not complete drug treatment as required by the family service plan. *See* TEX. FAM. CODE § 263.307(b)(10).

The caseworker also testified that J.W. did not complete a psychological evaluation and was unsuccessfully discharged from individual counseling. Completion of those services was required by J.W.'s family service plan. Similarly, the family service plan required J.W. to complete parenting courses, but she had not done so by the time of trial. *See id*.

The Department presented evidence that both children are bonded with their mother, but they are also "very bonded to their aunt and uncle. They refer to them as mom and dad." They are also bonded with the cousins with whom they live. The caseworker testified that the basic needs of both children are being met; they are enrolled in school, and there are no issues or concerns with their education. In that vein, the caseworker shared her concern that J.W. had not sent any tangible

items for the children during the course of the case. *See id.* § 263.307(b)(12) (considering whether the child's family demonstrates adequate parenting skills).

The caseworker testified that she had discussed with J.W. the consequences of not completing her services on several occasions. J.W responded "[t]hat she will get to it; she is having a hard time; and, she is trying the best that she can." When asked if J.W. had been able to communicate any specific condition that hindered her ability to actively engage in services, the caseworker reported, "[n]othing specific, just lack of transportation and it being too hard for her, again." *See id.*

The caseworker shared her concern that these young children would be at risk of harm if they were returned to J.W. She explained "[t]here is unstable housing; the lack of compliance with the family plan of service; ongoing drug usage; and, the failure to address the domestic violence in their relationship." She testified that it was in the best interest for J.W.'s parental rights to be terminated and explained that conclusion "is based on the lack of commitment the parents have shown to these two little girls; lack of compliance with the family plans; and, the lack of stability they have to offer the girls, if they were to return home." She repeated the Department's concern about placing the children back in a situation where they would be subjected to domestic violence. *See id.* § 263.307(b)(1), (5), (6), (7), (8), (10), (11), (12).

P.Y.-R.A., who was nine years old at the time of trial, was asked if she would like to be adopted. She answered that she would like to be adopted by her aunt and uncle. She explained her understanding that adoption means she would live with her aunt and uncle forever. P.Y.-R.A. told the caseworker she does not want to go back with her mother because she does not want to see her mother fight with G.D. and "she does not want to smell the smoke." She also shared her concerns about having enough food and going to school. *See id.* § 263.307(b)(1) (considering child's age and physical and mental vulnerabilities).

P.R.W.-D. was four years old at the time of trial. *See id*. The caseworker explained that due to her age, her decision about being adopted "changes in and out," but that she would prefer to stay with her sister, aunt, and uncle. P.R.W.-D. reported that she likes her school and her friends. *See id.* § 263.307(b)(13) (evaluating whether adequate support system of extended family and friends is available to the child).

The children's aunt and uncle want to adopt them. *See In re J.M.T.*, 519 S.W.3d 258, 271 (Tex. App.—Houston [1st Dist.] 2017, pet. denied). They told the caseworker they did not attend family functions where J.W. would be present, and the trial court could have credited that behavior as protecting the children. *See Holley*, 544 S.W.2d at 371–72 (considering stability of proposed placement in best interest analysis); *see also In re S.R.M.*, No. 04-21-00168-CV, 2021 WL 4875538, at *5–6 (Tex. App.—San Antonio Oct. 13, 2021, no pet.) (mem. op.) (considering actions taken to protect child in best interest analysis).

After reviewing the evidence under the appropriate standards of review, we conclude a reasonable factfinder could have formed a firm belief or conviction that termination of J.W.'s parental rights was in the best interests of the children. *In re J.F.C.*, 96 S.W.3d at 266. We therefore hold legally and factually sufficient evidence supports the trial court's best interest finding, and overrule J.W.'s arguments to the contrary.

CONCLUSION

We affirm the trial court's order of termination.

Beth Watkins, Justice