

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-22-00041-CV

**IN THE INTEREST OF O.L.S.**, a Child

From the 73rd Judicial District Court, Bexar County, Texas
Trial Court No. 2021-PA-00361
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:     Rebeca C. Martinez, Chief Justice

Sitting:         Rebeca C. Martinez, Chief Justice
                 Irene Rios, Justice
                 Liza A. Rodriguez, Justice

Delivered and Filed: June 29, 2022

AFFIRMED

Appellants Mother and Father appeal from the trial court's order terminating their parental rights to their child, O.L.S.[1]  In three issues, Mother challenges the sufficiency of the evidence to support the trial court's findings on two statutory grounds for termination under Texas Family Code section 161.001 and that termination is in the child's best interest.  *See* TEX. FAM. CODE ANN. § 161.001(b).  Father challenges, in two issues, the trial court's finding under section 161.002 that he failed to timely file an admission of paternity and the trial court's finding that termination is in the child's best interest.  *See id.* § 161.001(b)(2); 161.002(b).  We affirm.

---

[1] To protect the identity of the minor child in this appeal, we refer to the parents as "Mother" and "Father" and to the child by her initials.  *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b)(2).

**BACKGROUND**

On March 3, 2021, the Texas Department of Family and Protective Services (the "Department") filed a petition to terminate the parental rights of Mother and Father to O.L.S., who was five years old at the time. On that same date, the trial court ordered the Department to be named the child's temporary sole managing conservator, and the child was removed from her parent's possession soon thereafter.

On September 7, 2021, the trial court ordered the parents to comply with the Department's service plans. The plans for Mother and Father required each of them to maintain safe and stable housing and to obtain and maintain stable and legal employment. The trial court also ordered Mother and Father to engage and participate in parenting classes, domestic-violence-prevention classes, individual counseling, and psychological evaluations. Last, the Department required the parents to submit to random drug testing and to complete a substance abuse assessment and to follow treatment recommendations.

On January 5, 2022, the trial court held a bench trial, at which the Department's caseworker and Mother testified. Father was incarcerated at the time and did not appear. The caseworker testified that O.L.S. was removed from her parent's home because of concerns about domestic violence. The caseworker listed the services required of the parents. For Mother, these services were "to maintain stable housing, stable and legal employment, parenting classes, domestic violence classes, as well as substance abuse assessment and treatment, psychological, counseling, and drug testing." According to the caseworker, Mother "completed most of her service plan," but she did not provide proof of stable housing, only an address, which the caseworker had not visited. Mother submitted proof of employment to the caseworker on the morning of trial in the form of handwritten receipts for cash payments. The caseworker testified that Mother previously

told the caseworker that she had completed services related to housing and employment, but the caseworker found these statements to be untrue when she attempted to verify.

The caseworker also testified that Mother had not completed her individual counseling. According to the caseworker, Mother set up therapy on her own, but the therapists Mother engaged on her own refused to contact the caseworker. The caseworker then sent Mother to a therapist whom the caseworker chose, but Mother did not complete therapy with this therapist. Further, the caseworker testified that she requested that Mother submit to drug tests on eight occasions, but Mother submitted only twice. The caseworker testified that she had trouble sending Mother for testing because Mother was evasive when the caseworker asked her for her city of residence. Mother told the caseworker that Mother used methamphetamine three times in her life. According to the caseworker, Mother failed to submit honestly on her first drug assessment and had to redo it. After her second drug assessment, Mother was referred for intensive inpatient drug treatment with outpatient follow-up, but Mother had not begun this treatment. The caseworker testified that several times Mother told the caseworker that she wished to go to a specific inpatient treatment program and would admit herself that day or the next, but Mother never went.

According to the caseworker, the services required of Father were "[p]arenting, domestic violence as a perpetrator, employment, housing, counseling, psychological, and substance abuse treatment and services." The caseworker testified that Father completed a psychological evaluation and began, but did not finish, parenting classes. The caseworker referred Father for drug testing twice, but he did not present either time.

According to the caseworker, Father was violent toward Mother, yet Mother maintained a relationship with him. On August 17, 2021, Mother and Father were arrested in San Marcos. Mother was charged with "[t]heft of a firearm or possession of a stolen firearm." Father was arrested for aggravated assault and "the firearm charge." The caseworker stated that the

- 3 -

aggravated assault charge did not regard Mother. According to the caseworker, Mother was incarcerated for about a week. In addition to Mother's relationship with Father, she entered into another relationship while the case was ongoing that was characterized by domestic violence. The caseworker did not know whether this relationship had ended by the time of trial.

According to the caseworker, Father had been charged, prior to August 2021, with unauthorized use of a vehicle and with a charge related to domestic violence against Mother. Father was incarcerated at the time of trial and had not been given a release date.

According to the caseworker, Mother had attended about ninety percent of her visits with O.L.S., and Father maintained consistent contact with O.L.S. prior to his incarceration. After removal, the Department placed O.L.S. with a foster family. The Department's plan was for O.L.S.'s adoption by her foster parents. The caseworker testified that O.L.S. was bonded with her foster family.

Mother testified that she ended her relationship with Father by July 2021, and that she was not in a second relationship involving domestic violence. Mother also asserted that she was not arrested with Father on August 17, 2021, but she was arrested after she had arrived at the location. Mother admitted that she used methamphetamine in the past, and she asserted that she started attending Narcotics Anonymous meetings and was waiting for a bed to open at a specific inpatient drug treatment facility. Mother further testified that she had been homeless for seventy percent of the time the case had been ongoing but that she had leased a residence the month before trial. Mother, however, had not given the address of her new residence to her caseworker. In addition, Mother testified that she experienced problems gaining employment without an address, but that she was currently employed with a painting company. Mother believed that she could satisfy her service plan if given more time. She asserted that transportation was the biggest hindrance to

completion of her required services, although she acknowledged that she did not request bus passes from her caseworker and that her caseworker had offered Mother car rides.

After hearing this testimony, the trial court ordered termination of Mother's and Father's parental rights to O.L.S. It found that Mother failed to comply with provisions of an order that specifically established the actions necessary for the return of O.L.S., *see* TEX. FAM. CODE ANN. § 161.001(b)(1)(O), and used a controlled substance in a manner that endangered O.L.S. and failed to complete a court-ordered substance abuse treatment program or continued substance abuse after treatment, *see id.* § 161.001(b)(1)(P). The trial court also found that termination of Mother's parental rights was in O.L.S.'s best interest. *See id.* § 161.001(b)(2). The trial court made similar findings as to Father. It also found that Father constructively abandoned O.L.S., *see id.* § 161.001(b)(1)(N), and failed to timely file an admission of paternity, *see id.* § 161.002(b). Mother and Father timely appealed.

## STANDARD OF REVIEW

A parent-child relationship may be terminated, pursuant to section 161.001 of the Texas Family Code, only if the trial court finds by clear and convincing evidence one of the predicate grounds enumerated in subsection (b)(1) and that termination is in a child's best interest. *See id.* § 161.001(b)(1), (2). Clear and convincing evidence requires "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007.

We review the legal and factual sufficiency of the evidence under the standards of review established by the Texas Supreme Court in *In re J.F.C.*, 96 S.W.3d 256, 266–67 (Tex. 2002). In reviewing the legal sufficiency of the evidence, we must "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *Id.* at 266. "[A] reviewing court must assume that

the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *Id.* In reviewing the factual sufficiency of the evidence, we "must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing." *Id.* "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.*

## MOTHER

Mother challenges the legal and factual sufficiency of the evidence supporting the trial court's findings on both statutory predicate grounds for termination and its finding that termination is in O.L.S.'s best interest. *See* TEX. FAM. CODE ANN. § 161.001(b). Because we affirm pursuant to ground (O), we consider only that ground and best interest. *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003) (explaining that only one predicate finding under section 161.001(b)(1) and a best-interest finding is necessary to support judgment of termination); *see also In re N.G.*, 577 S.W.3d 230, 234 (Tex. 2019) (per curiam).

### Predicate Ground (O)

Section 161.001(b)(1)(O) provides a ground for termination of a parent-child relationship upon proof, by clear and convincing evidence, that a parent:

> failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child[.]

TEX. FAM. CODE ANN. § 161.001(b)(1)(O). A court may not order termination under subsection O,

> based on the failure by the parent to comply with a specific provision of a court order if a parent proves by a preponderance of evidence that: (1) the parent was

unable to comply with specific provisions of the court order; and (2) the parent made a good faith effort to comply with the order and the failure to comply with the order is not attributable to any fault of the parent.

*Id.* § 161.001(d).

"Texas courts generally take a strict approach to subsection (O)'s application." *In re S.J.R.-Z.*, 537 S.W.3d 677, 690 (Tex. App.—San Antonio 2017, pet. denied) (quoting *In re C.A.W.*, No. 01-16-00719-CV, 2017 WL 929540, at *4 (Tex. App.—Houston [1st Dist.] Mar. 9, 2017, no pet.) (mem. op.)). "A parent's failure to complete one requirement of her family service plan supports termination under subsection (O)." *In re D.D.R.*, No. 04-18-00585-CV, 2019 WL 360657, at *2 (Tex. App.—San Antonio Jan. 30, 2019, pet. denied) (mem. op.) (internal quotation marks and brackets omitted) (quoting *In re J.M.T.*, 519 S.W.3d 258, 267 (Tex. App.—Houston [1st Dist.] 2017, pet. denied)); *see also In re Z.M.M.*, 04-20-00372-CV No. 04-18-00099-CV, 2019 WL 4805399, at *5 (Tex. App.—San Antonio Oct. 2, 2019, no pet.).

Mother argues that she completed most of her services, that the Department did not introduce evidence of noncompliance, and that Mother faced three major obstacles to her ability to complete services: communication, homelessness, and transportation. She asserts that by the time of trial she had found housing and employment. She does not contest that she failed to complete substance abuse treatment or individual counseling. Instead, she argues that completion was not required, only participation, and that she "was working to complete [drug] treatment" and "began attending individual therapy sessions."

"[W]hether a parent has done enough under the family-service plan to defeat termination under subpart (O) is ordinarily a fact question." *In re S.M.R.*, 434 S.W.3d 576, 584 (Tex. 2014). Here, the trial testimony as to Mother's lack of participation supports the trial court's finding of substantial noncompliance. *See id.* ("[P]arents have generally had little success arguing substantial compliance to reverse a termination judgment under subpart (O)[.]"). According to Mother, her

participation in drug treatment consisted of attending Narcotics Anonymous meetings and waiting for a bed to become available at a specific inpatient drug treatment facility. The caseworker testified that Mother was untruthful on an initial substance abuse assessment and that Mother asserted several times that she intended to admit herself to an inpatient drug treatment program within a day, but she never did. Additionally, Mother acknowledged that she used methamphetamine in the past, and the caseworker testified that Mother avoided answering questions about her city of residence when the caseworker sought this information for drug-testing purposes. Altogether this testimony supports a finding of Mother's noncompliance with the drug treatment requirement of her service plan. The evidence reasonably suggests that Mother obstructed and delayed drug testing and assessment and ultimately did not participate in a drug treatment program after repeatedly asserting an initiative to do so, but failing to follow through. Mother asserts challenges with communication, homelessness, and transportation, but none of these challenges provide an excuse for noncompliance with inpatient drug treatment, and Mother does not argue otherwise. *See* TEX. FAM. CODE ANN. § 161.001(d).

The trial testimony as to individual counseling also supports the trial court's noncompliance finding. Mother argues as to counseling that, by the time of trial, she "began attending individual therapy sessions." However, for support, Mother cites to her testimony that she began attending Narcotics Anonymous meetings. Mother's service plan required her to participate in individual counseling in addition to any substance-abuse support group. The caseworker testified that she could not verify whether Mother attended individual counseling sessions with therapists Mother chose, and Mother did not complete therapy with the therapist selected by the caseworker.

Evidence of Mother's noncompliance with drug treatment and individual counseling, as required by her court-ordered service plan, is legally and factually sufficient to support the trial

court's subsection (O) finding. *See In re Z.M.M.*, 2019 WL 4805399, at \*5 (holding that evidence of one unexcused violation of trial court's order was legally and factually sufficient to support subsection (O) finding); *In re D.J.H.*, No. 04-11-00815-CV, 2012 WL 1654953, at \*3 (Tex. App.—San Antonio May 9, 2012, no pet.) (mem. op.) (holding that, "[a]lthough it [was] apparent that [mother] attempted to complete most of the service plan's requirements," her failure to complete parenting and domestic violence classes and drug treatment, was factually sufficient to support subsection (O) finding).

### **Best Interest**

Mother also challenges the legal and factual sufficiency of the trial court's best interest finding. *See* TEX. FAM. CODE ANN. § 161.001(b)(2). There is a strong presumption that keeping a child with a parent is in a child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). However, it is equally presumed that "the prompt and permanent placement of the child in a safe environment is . . . in the child's best interest." TEX. FAM. CODE ANN. § 263.307(a). In determining whether a child's parent is willing and able to provide the child with a safe environment, we consider the factors set forth in Texas Family Code section 263.307(b). *See id.* § 263.307(b).

Our best-interest analysis is guided by consideration of the non-exhaustive *Holley* factors. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These factors include: (1) the child's desires; (2) the child's present and future emotional and physical needs; (3) any present or future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist the individuals seeking custody to promote the child's best interest; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions which may indicate that the existing parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions. *See id.*; *accord In re E.C.R.*, 402 S.W.3d 239, 249 n.9 (Tex. 2013). The Department is not required to

prove each factor, and the absence of evidence regarding some of the factors does not preclude the factfinder from reasonably forming a strong conviction that termination is in a child's best interest, particularly if the evidence is undisputed that the parent-child relationship endangered the safety of the child. *See In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). The focus of our review is whether the evidence, as a whole, is sufficient for the trial court to have formed a strong conviction or belief that termination of the parent-child relationship is in the best interest of the child. *Id.*

The trial court's best-interest finding is supported by legally and factually sufficient evidence. O.L.S. was removed from her parents' care because of concerns about domestic violence. During the pendency of the case, Mother continued a relationship with Father and entered into another relationship that was marked by domestic violence. Although there is no testimony that any violence was directed at O.L.S., Mother's violent relationships support the trial court's best-interest finding under the third *Holley* factor—emotional and physical danger to the child now and in the future. *See Holley*, 544 S.W.2d at 371–72; *see also* TEX. FAM. CODE ANN.§ 263.307(b)(12)(E) (providing court may consider whether parent has adequate parenting skills to protect child from repeated exposure to violence although violence may not be directed at child); *In re S.A.*, No. 04-17-00571-CV, 2018 WL 521626, at \*4 (Tex. App.—San Antonio Jan. 24, 2018, no pet.) (mem. op.) ("Simply exposing a child to the other parent's violence is a relevant consideration in determining a child's best interest.").

Mother was arrested for "[t]heft of a firearm or possession of a stolen firearm" and was incarcerated while this case was pending. Mother also admitted to past methamphetamine use and had not attended a drug treatment program. "A history of drug abuse and an inability to maintain a lifestyle free from arrests and incarcerations is relevant to a trial court's best-interest determination." *In re F.M.A.*, No. 04-16-00318-CV, 2016 WL 4379456, at \*3 (Tex. App.—San Antonio Aug. 17, 2016, pet. denied); *see also In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San

Antonio 2013, pet. denied) ("A trier of fact may measure a parent's future conduct by his past conduct . . . .").

Mother's arrest and incarceration also exposed O.L.S. to potential emotional distress and instability. *See In re S.M.L.*, 171 S.W.3d 472, 479 (Tex. App.—Houston [14th Dist.] 2005) ("When parents . . . repeatedly commit criminal acts that subject them to the possibility of incarceration, that can negatively impact a child's living environment and emotional well-being."). In addition, Mother testified that she was homeless and unemployed for much of the case, and she had trouble with reliable transportation. Mother's instability weighs in favor of the trial court's best-interest finding. *See In re of J.S.R.*, No. 04-21-00517-CV, 2022 WL 1559107, at *4 (Tex. App.—San Antonio May 18, 2022, no pet. h.) (mem. op.) ("As a general rule, conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child.") (citation omitted); *In re L.G.R.*, 498 S.W.3d at 205 ("A child's need for permanence through the establishment of a stable, permanent home has been recognized as the paramount consideration in a best-interest determination.") (citation omitted).

Further, Mother's failure to comply with her service plan indicates that she did not have the motivation or ability to seek out needed services. *See In re J.M.T.*, 519 S.W.3d at 270 ("A fact finder may infer from a parent's failure to take the initiative to complete the services required to regain possession of his child that he does not have the ability to motivate himself to seek out available resources needed now or in the future."); *see also* TEX. FAM. CODE ANN. § 263.307(b)(10), (11) (providing courts may consider willingness and ability of child's family to seek out, accept, and complete counseling services and willingness and ability of child's family to effect positive environmental and personal changes within reasonable period of time); *Holley*, 544 S.W.2d at 371–72 (listing parental abilities of individual seeking custody and programs available to assist individual as best-interest factor).

The Department's plan for O.L.S. was adoption by her foster parents, and O.L.S. was bonded with her foster family. *See Holley*, 544 S.W.2d at 372 (listing stability of proposed placement as best-interest factor); *In re G.V.*, No. 14–02–00604–CV, 2003 WL 21230176, at *5 (Tex. App.—Houston [14th Dist.] May 29, 2003, pet. denied) (mem. op.) (noting stability that proposed placement promises "weigh[s] heavily in the court's finding that termination is in the [child's] best interest").

We hold the evidence is legally and factually sufficient to support the trial court's finding that termination of Mother's parental rights is in the best interest of O.L.S. *See* TEX. FAM. CODE ANN. § 161.001(b)(2); *see also In re A.B.*, 437 S.W.3d 498, 505 (Tex. 2014) (recognizing appellate court need not detail all evidence if affirming termination judgment).

**FATHER**

The trial court terminated Father's parental rights pursuant to Family Code sections 161.001 and 161.002. Because these sections provide independent grounds for termination, we affirm as to section 161.001 and do not reach Father's issue as to section 161.002. *See* TEX. R. APP. P. 47.1; *In re T.N.J.J.*, No. 04-19-00228-CV, 2019 WL 6333470, at *8 (Tex. App.—San Antonio Nov. 27, 2019, no pet.) (mem. op.) (affirming termination pursuant to section 161.001 and not reaching parent's issue under section 161.002).

Father does not challenge the trial court's findings on the predicate grounds that he constructively abandoned O.L.S., *see* TEX. FAM. CODE ANN. § 161.001(b)(1)(N), failed to comply with provisions of an order that specifically established the actions necessary for the return of O.L.S., *see id.* § 161.001(b)(1)(O), and used a controlled substance in a manner that endangered O.L.S. and failed to complete a court-ordered substance abuse treatment program or continued substance abuse after treatment, *see id.* § 161.001(b)(1)(P). Therefore, we consider only Father's challenge to the best-interest finding. *See id.* § 161.001(b)(1).

As with Mother, Father was arrested while this case was pending. His arrest was for aggravated assault and for "[t]heft of a firearm or possession of a stolen firearm." Prior to this arrest, Father had been charged with a domestic violence crime regarding Mother and for unauthorized use of a vehicle. Father was incarcerated during the pendency of the case, including at the time of trial, and the caseworker did not know when Father would be released. Father's arrests and incarceration exposed O.L.S. to a life of uncertainty and instability and potential emotional and physical distress. *See In re F.M.A.*, 2016 WL 4379456, at *3; *In re S.M.L.*, 171 S.W.3d at 479; *In re E.D.*, 419 S.W.3d at 620. His physical violence against Mother exposed O.L.S. to emotional and physical danger and to an unstable and unpredictable environment. *See* TEX. FAM. CODE ANN.§ 263.307(b)(12)(E); *Holley*, 544 S.W.2d at 371–72; *In re S.A.*, 2018 WL 521626, at *4; *see also In re O.E.R.*, 573 S.W.3d 896, 905–06 (Tex. App.—El Paso 2019, no pet.) ("Physical violence in the home leads to an unstable and unpredictable environment for children."); *In re J.I.T.P.,* 99 S.W.3d 841, 845 (Tex. App.—Houston [14th Dist.] 2003, no pet.) ("[D]omestic violence, want of self-control, and propensity of violence may be considered as evidence of endangerment.").

Moreover, Father did not complete a parenting class, as required by his service plan, or comply with the Department's request that he submit to drug tests. Father does not challenge the trial court's findings on the predicate grounds for termination, including that he failed to comply with his court-ordered service plan or that he used a controlled substance in a manner that endangered O.L.S. and failed to complete a court-ordered substance abuse treatment program or continued substance abuse after treatment. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(O), (P); *cf. In re C.H.*, 89 S.W.3d at 28 (explaining that evidence that proves one or more statutory grounds for termination may be probative in proving termination is in child's best interest). Father's noncompliance with court orders suggests that he lacked the motivation to seek out resources now

or in the future to effect positive environmental and personal change. *See In re J.M.T.*, 519 S.W.3d at 270; *see also* TEX. FAM. CODE ANN. § 263.307(b)(10), (11); *Holley*, 544 S.W.2d at 371–72.

Father does not contest the trial court's finding on the predicate ground that he constructively abandoned O.L.S. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(N). The caseworker testified that O.L.S. was bonded with her foster family, and the Department's plan was for her adoption by the foster parents. *See Holley*, 544 S.W.2d at 372; *In re G.V.*, 2003 WL 21230176, at *5.

We hold the evidence is legally and factually sufficient to support the trial court's finding that termination of Father's parental rights is in O.L.S.'s best interest. *See* TEX. FAM. CODE ANN. § 161.001(b)(2); *see also In re A.B.*, 437 S.W.3d at 505.

## CONCLUSION

We affirm the trial court's order of termination.

Rebeca C. Martinez, Chief Justice