**Opinion filed November 6, 2025**



In The

# Eleventh Court of Appeals

_____

## No. 11-25-00079-CV

_____

## IN THE INTEREST OF J.S., A CHILD

**On Appeal from the 326th District Court**
**Taylor County, Texas**
**Trial Court Cause No. 11177-CX**

## M E M O R A N D U M   O P I N I O N

This is an accelerated appeal from an order in which the trial court terminated Appellant-mother's[1] parental rights to her child, J.S.[2]  On appeal, Appellant challenges the sufficiency of the evidence to support the trial court's findings that: (1) termination of her parental rights is in the child's best interest; and (2) the Department of Family and Protective Services (the Department) made reasonable

---

[1]The trial court also terminated the parental rights of J.S.'s biological father, who did not file a notice of appeal.

[2]We use initials to refer to the child.  *See* TEX. R. APP. P. 9.8(b).

efforts to return the child prior to the commencement of the final termination hearing. *See* TEX. FAM. CODE ANN. § 161.001(b)(2), (f)[3] (West Supp. 2024). We affirm the trial court's order.

*Termination Findings and Standards*

The termination of parental rights must be supported by clear and convincing evidence. FAM. § 161.001(b). To terminate one's parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(b)(1)(A)–(V), and that termination is in the best interest of the child. *Id.* § 161.001(b)(2). Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007 (West 2019).

In this case, the trial court found that clear and convincing evidence established that Appellant: (1) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endangered his physical or emotional well-being; and (2) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangered his physical or emotional well-being. *See id.* § 161.001(b)(1)(D), (E). The trial court further found, pursuant to Section 161.001(b)(2), that termination of Appellant's parental rights was in the child's best interest. *See id.* § 161.001(b)(2).

In reviewing a legal sufficiency challenge, we must decide whether "a reasonable trier of fact could have formed a firm belief or conviction that its finding

---

[3]We note that the legislature added subsection (f) to Section 161.001 effective September 1, 2023. Act of May 25, 2023, 88th Leg., R.S., ch. 675, §§ 1, 7, 2023 Tex. Gen. Laws 1644–45 (codified at FAM. § 161.001(f)). This change in the law only applies to suits affecting the parent-child relationship filed on or after the effective date of this statutory amendment. *Id.* §§ 7–8. As set out below, the Department filed the petition to terminate the parent-child relationship on August 22, 2023. Thus, we apply the law in effect at the time the suit was filed below.

was true." *In re J.W.*, 645 S.W.3d 726, 741 (Tex. 2022). Cognizant of the required appellate deference to the factfinder, "we look at all the evidence in the light most favorable to the finding, assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so, and disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.* (internal quotation marks omitted). "However, we may not disregard 'undisputed facts that do not support the finding,'" and the factfinder is "the sole arbiter of the witnesses' credibility and demeanor." *Id.* (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002) then quoting *In re J.F.-G.*, 627 S.W.3d 304, 312 (Tex. 2021)). As such, when considering the credibility of the evidence presented, we may not substitute our judgment for that of the factfinder. *J.F.-G.*, 627 S.W.3d at 316.

In assessing whether the evidence is factually sufficient, we weigh the disputed evidence that is contrary to the finding against all the evidence that favors the finding. *In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018). We give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009); *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002); *In re L.C.C.*, 667 S.W.3d 510, 512 (Tex. App.—Eastland 2023, pet. denied).

With respect to the best interest of the child, no unique set of factors need be proved. *L.C.C.*, 667 S.W.3d at 513; *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). Further, the best interest determination does not restrict the proof to any specific factor or factors. *In re J.S.*, 687 S.W.3d 541, 547 (Tex. App.—Eastland 2024, no pet.). However, courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to: (1) the desires of the child; (2) the

3

emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by the individuals or the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id.*

To support a best-interest finding, the Department is not required to prove each *Holley* factor; in some circumstances, evidence of the presence of only one factor will suffice. *C.H.*, 89 S.W.3d at 27; *In re D.M.*, 452 S.W.3d 462, 473 (Tex. App.—San Antonio 2014, no pet.). Additionally, the same evidence that proves one or more statutory grounds for termination may also constitute sufficient, probative evidence illustrating that termination is in the child's best interest. *C.H.*, 89 S.W.3d at 28; *C.J.O.*, 325 S.W.3d at 266.

The absence of evidence of some *Holley* considerations does not preclude the factfinder from reasonably inferring or forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence indicates that the parent-child relationship and the parent's conduct has endangered the safety and well-being of the child. *C.H.*, 89 S.W.3d at 27. This is so because the best interest analysis evaluates the best interest of the child, not the parent. *J.S.*, 687 S.W.3d at 548; *In re E.C.R.*, 638 S.W.3d 755, 767 (Tex. App.—Amarillo 2021, pet. denied) (citing *In re B.C.S.*, 479 S.W.3d 918, 927 (Tex. App.—El Paso 2015, no pet.)).

In this regard, the factfinder may measure a parent's future conduct by his or her past conduct in determining whether termination of the parent-child relationship is in the child's best interest. *J.S.*, 687 S.W.3d at 548; *In re Z.R.M.*, 665 S.W.3d 825,

829 (Tex. App.—San Antonio 2023, pet. denied); *In re D.S.*, 333 S.W.3d 379, 384 (Tex. App.—Amarillo 2011, no pet.). The factfinder may infer that a parent's past conduct that endangered the safety and well-being of the child may recur in the future if the child is returned to the custody of the parent. *In re M.N.M.*, 708 S.W.3d 321, 326 (Tex. App.—Eastland 2025, pet. denied); *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.). Additionally, the factfinder may infer from a parent's past inability to meet the child's physical and emotional needs an inability or unwillingness by the parent to meet the child's physical and emotional needs in the future. *M.N.M.*, 708 S.W.3d at 326; *see also In re A.S.*, No. 11-16-00293-CV, 2017 WL 1275614, at *3 (Tex. App.—Eastland Mar. 31, 2017, no pet.) (mem. op.).

*The Evidence Presented at Trial*

The Department has been involved in Appellant's life for over a decade for "[s]everal allegations of domestic violence and drug use." Prior to J.S.'s birth on December 7, 2018, the parent-child relationship between Appellant and her two daughters was terminated.

In July 2023, Department investigator Thomas Moore attempted to contact Appellant regarding additional allegations of neglectful supervision, drug use, and physical abuse of J.S. Appellant and five-year-old J.S. were living with Appellant's boyfriend, Lorne Roach, a physically abusive methamphetamine user. Moore visited Appellant's home twice before she answered the door; she remained uncooperative, and would not permit Moore inside the home or to observe J.S. Because Moore was unable to ensure J.S.'s safety, he obtained a court order requiring Appellant, Roach, and J.S. to submit to hair follicle drug testing. After J.S. and both adults tested positive for methamphetamine, the Department endeavored to avoid removal with a safety plan. However, as a result of Appellant's

continued obstinance, the Department sought and was granted temporary managing conservatorship of J.S. on August 22, 2023, the same date that it filed the underlying termination proceeding.

The Department created a family plan of service for Appellant, which the trial court amended and adopted as a court order in October 2023. Appellant's service plan required that she maintain sobriety, submit to drug testing within twenty-four hours of her case manager's directive to test, complete a substance abuse assessment and treatment program, individual counseling, a psychological evaluation, parenting classes, and a domestic violence course. Appellant was also ordered to maintain a safe, drug-free home environment, obtain legal employment and reliable transportation, and she was prohibited from interfering with her drug test results by dying or modifying her hair, or by cutting or polishing her nails. Finally, the trial court further clarified that anyone in a relationship with Appellant or with whom she resides "shall complete parenting classes and random drug testing."

Appellant acknowledged that J.S. was exposed to methamphetamine, and that it caused the child harm. She completed her parenting classes and counseling, maintained consistent contact with the Department, and attended parent-child visitation. However, she bleached her hair at least once, kept her fingernails and toenails too short to provide a sample for drug testing, then tested positive for methamphetamine in December 2024.

The final termination hearing commenced on February 12 and concluded on March 17, 2025. Christophe Mwungura, the 2INgage[4] case manager, testified that

---

[4]The Department contracts with 2INgage to provide case management services to meet the needs of children, youth, and families. *See In re J.A.*, No. 07-22-00350-CV, 2023 WL 3305176, at *2 n.5 (Tex. App.—Amarillo May 8, 2023, pet. denied) (mem. op.) (explaining that 2INgage is "a state contractor providing case management and family services designed to achieve permanency"); *see also In re A.S.*, No. 02-23-00160-CV, 2023 WL 4779826, at *1 n.3 (Tex. App.—Fort Worth July 27, 2023, no pet.) (mem. op.).

J.S. has lived in a foster home in Brownwood since January 2024. He was seven years old and in first grade when the final hearing began, was receiving special accommodations in school, and was doing well. J.S. exhibited behavioral issues such as fighting and needed several medications for his attention deficit hyperactive disorder (ADHD) and his sleep disorder. J.S.'s current placement is not an adoptive home, but his foster parents are willing to care for him until he is adopted.

Appellant and J.S.'s biological father testified at the final hearing. Appellant attributed J.S.'s uncontrollable outbursts and other behavioral issues to "autism by injury." She explained that "[s]ince the day [J.S.] was born it was just a complete nightmare . . . just the situation that he was born into." Appellant testified that as a result of physical abuse, J.S. suffered a cracked skull and had a traumatic brain injury; specifically, damage to his frontal lobe, which limited his ability to regulate his emotions and senses. This led to unpredictable behaviors such as asking strangers if he could go home with them and threatening to kill Appellant and her then-husband.

Appellant moved residences five times between J.S.'s removal and the final termination hearing on February 12, 2025. Her abusive relationship with Roach ended in September 2024 after what she described as a "major falling out with the police involved." Their "physical altercations" and "police interactions" resulted in their eviction. Soon thereafter, Appellant moved in with her new boyfriend, Nathan Fort. Fort provided a urine sample for drug testing once but refused to submit to hair follicle drug testing. Despite the trial court's order, Appellant's position was that Fort "is an adult" and she "cannot force him to test" because it was her, not Fort, "who got in trouble for doing something wrong." She added that Fort was "in the process of moving out" of their shared home because they were no longer together.

Despite Appellant's claim that she worked multiple jobs since J.S.'s removal, she did not provide proof of employment until March 2025, and it did not reflect her cash "bonuses that [she] get[s] from [her] boss." She also did not have reliable transportation, which was important due to J.S.'s need for additional services and transportation to his appointments and school.

Finally, Appellant admitted to knowing that Roach was a methamphetamine user, and that she prioritized Roach over her child. She denied using methamphetamine since December 2023 after separating from Roach and had no explanation for testing positive in December 2024.

At the conclusion of the hearing, the referring court terminated Appellant's parental rights under Section 161.001(b)(1)(D) and (E) and found termination to be in the best interest of the child. *See* FAM. § 161.0001(b)(1)(D), (E), (b)(2). In support of its decision, the trial court explained:

> [T]he child's desires are not necessarily dispositive of best interest as it relates to termination, and a long and continuing history of poor choices that endanger a child can't necessarily be cured in the 30 to 60 days before a case goes to trial.
>
> This child needs the opportunity at some stability and to not be exposed to drugs and to the lifestyle of drug addiction. . . .
>
> The [c]ourt also finds [Appellant's] testimony . . . to not be credible.

This appeal followed.

*Best Interest of the Child*

In her first issue, Appellant challenges the legal and factual sufficiency of the evidence to support the trial court's finding that termination of her parental rights is in the best interest of the child. She premises her issue on the contention that the evidence showed that she had a stable home and income, and that she had been drug free for over a year. Appellant further asserts that "the Department left the child in

foster care limbo, failed to search for relative placements, and provided little or no support for services."

"'[B]est interest' is a term of art encompassing a much broader, facts-and-circumstances based evaluation that is accorded significant discretion." *In re Lee*, 411 S.W.3d 445, 460 (Tex. 2013) (quoting *Holley*, 544 S.W.2d at 371–72). We reiterate that the trial court, as the trier of fact, is the sole judge of the witnesses' credibility. *J.F.-G.*, 627 S.W.3d at 312. We are not at liberty to disturb the determinations of the factfinder so long as those determinations are not unreasonable. *Id.* at 311–12; *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). Giving the requisite due deference to the trial court, we hold that, based on the evidence in the record and the application of the *Holley* factors, the trial court could have formed a firm belief or conviction that termination of Appellant's parental rights was in the best interest of the child. *See Holley*, 544 S.W.2d at 371–72.

Evidence of each *Holley* factor is not required to support a best-interest finding. *In re S.R.*, 452 S.W.3d 351, 366 (Tex. App.—Houston [14th Dist.] 2014, pet. denied); *In re S.O.*, No. 05-22-01019-CV, 2023 WL 2237084, at *11 (Tex. App.—Dallas Feb. 27, 2023, no pet.) (mem. op.). In other words, the absence of evidence regarding some of these factors does not preclude a best-interest finding, "particularly if [the] undisputed evidence shows the parental relationship endangered the child's safety." *In re N.T.*, 474 S.W.3d 465, 477 (Tex. App.—Dallas 2015, no pet.) (quoting *In re A.E.*, No. 05-14-01340-CV, 2015 WL 1184179, at *6 (Tex. App.—Dallas 2015, pet. denied) (mem. op.)). Consequently, "evidence relating to one single factor may be adequate in a particular situation to support a finding that termination is in the best interests of the child." *J.S.*, 687 S.W.3d at 552 (quoting *In re K.S.*, 420 S.W.3d 852, 855 (Tex. App.—Texarkana 2014, no pet.)). And evidence that is relevant to Section 161.001(b)(1) termination grounds may be

probative of the child's best interest. *See E.C.R.*, 402 S.W.3d 239, 249–50 (Tex. 2013) (citing *C.H.*, 89 S.W.3d at 28).

The Department presented clear and convincing evidence that Appellant endangered J.S., which also supports the trial court's firm belief that terminating her parental rights was in J.S.'s best interest. Significantly, Appellant's methamphetamine use posed multiple potential dangers to the child and "implicates most of the *Holley* factors." *In re E.D.*, 682 S.W.3d 595, 607 (Tex. App.—Houston [1st Dist.] 2023, pet. denied). A parent's continuing pattern of drug use can support a best-interest finding due to the "attendant risks to employment, housing, and prolonged absence from the child[]." *In re R.R.A.*, 687 S.W.3d 269, 281 (Tex. 2024). Such risks were present in this case—Appellant acknowledged that J.S.'s positive drug test was the result of exposure from hers and Roach's methamphetamine use. *See In re C.S.*, 717 S.W.3d 1, 22 (Tex. App.—Eastland 2024, pet. granted) ("The children's positive drug tests permit the strong inference that they were exposed to marihuana through [a]ppellant's illegal drug use, which . . . is indicative of an endangering environment."); *In re N.T.*, No. 02-24-00067-CV, 2024 WL 2066375, at *5 (Tex. App.—Fort Worth May 9, 2024, no pet.) (mem. op.) (affirming a conduct-based endangerment finding based in part on the children testing positive for marihuana and cocaine upon removal). Appellant also tested positive for methamphetamine less than three months before the final hearing. Although she denied using illegal drugs since December 2023—several months after J.S. was removed—she bleached her hair and kept her nails short, which could be reasonably interpreted by the trial court as attempts to obscure drug test results. As such, the trial court was permitted to disbelieve Appellant's testimony and form a firm conviction or belief that Appellant's illegal drug use was an ongoing concern. *See J.S.*, 687 S.W.3d at 551; *In re Z.J.B.*, No. 14-18-00759-CV, 2019 WL 347474, at *5,

*7 (Tex. App.—Houston [14th Dist.] Jan. 29, 2019, pet. denied) (mem. op.) (a parent's single positive drug screen and his failure to submit to three additional drug screenings suggested continued illegal drug use by him and weighed in favor of the trial court's best-interest finding); *see also In re J.M.T.*, 519 S.W.3d 258, 269 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) ("Parental drug abuse reflects poor judgment and may be a factor to consider in determining a child's best interest.").

In addition to Appellant's history of substance abuse, her past illegal activity and history with the Department support the trial court's best interest finding. *See In re T.B.*, No. 09-20-00172-CV, 2020 WL 6787523, at *8 (Tex. App.—Beaumont Nov. 19, 2020, no pet.) (mem. op.) ("The factfinder may consider prior CPS history of neglect, drug use, or lack of care for the children."). Notwithstanding the Department's resources expended for years on keeping Appellant's children in her care, her parental rights to her two daughters were terminated shortly before J.S. was born. Appellant also conceded at trial that she was previously involved in drug dealing. Such conduct undoubtedly "exposes the [child] to the possibility that [Appellant] may be impaired or imprisoned," which weighs in favor of finding that termination of Appellant's parental rights was in J.S.'s best interest. *See J.S.*, 687 S.W.3d at 551.

Furthermore, Appellant failed to establish an ability to secure and maintain a safe, stable home environment free from drug use and violence. *See J.W.*, 645 S.W.3d at 742 (considering the parent's unstable and uncertain living situation in upholding the trial court's best-interest finding); *In re O.E.R.*, 573 S.W.3d 896, 905 (Tex. App.—El Paso 2019, no pet.) ("Physical violence in the home leads to an unstable and unpredictable environment for children."); *In re K.G.*, No. 11-24-00236-CV, 2025 WL 477650, at *5 (Tex. App.—Eastland Feb. 13, 2025, no pet.) (mem. op.). She instead demonstrated a pattern of choosing physically abusive drug

11

users as companions—"[i]nappropriate, abusive, or unlawful conduct by persons who live in the child's home or with whom the child is compelled to associate on a regular basis" is an important consideration in the trial court's best interest analysis. *See J.D.S. v. Tex. Dep't of Family Protective Servs.*, 458 S.W.3d 33, 41, 45 (Tex. App.—El Paso 2014, no pet.) (considering such conduct as "part of the 'conditions or surroundings' of the child's home" in addressing the trial court's endangerment and best interest findings). Not only did Appellant fail to remove J.S. from the endangering environment created by her and Roach; she conceded that J.S. was "born into" an abusive situation. *In re S.V.*, No. 02-23-00188-CV, 2023 WL 5967890, at *9 (Tex. App.—Fort Worth Sept. 14, 2023, no pet.) (mem. op.) (affirming a conduct-based endangerment finding based in part on evidence that "both drugs and drug users were finding their way into the children's home"); *M.C. v. Tex. Dep't of Fam. & Protective Servs.*, No. 03-17-00104-CV, 2017 WL 3379114, at *5 (Tex. App.—Austin Aug. 1, 2017, no pet.) (mem. op.) (considering a parent's continued association with "people who smoke marihuana all the time" as evidence of endangerment). Appellant nevertheless chose to remain in an endangering environment that led to J.S. being abused and suffering life-altering injuries. *See In re A.H.*, No. 11-24-00075-CV, 2024 WL 3879987, at *6 (Tex. App.—Eastland Aug. 21, 2024, pet. denied) (mem. op.) ("Appellant broadcasted the father's ongoing aggression and violence on social media, rather than attempting to protect [the child] from it."). The trial court could have rationally inferred that relinquishing J.S. to Appellant's care would be contrary to his best interest. *See In re E.M.*, No. 11-24-00310-CV, 2025 WL 1240792, at *10 (Tex. App.—Eastland Apr. 30, 2025, no pet.) (mem. op.) (citing *In re R.W.*, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied)).

Appellant completed several of her service plan requirements, but tested positive for methamphetamine, demonstrated that her living situation frequently changed and was uncertain at best, failed to timely provide proof of legal income, and did not have reliable transportation. *See E.C.R.*, 402 S.W.3d at 249 (A parent's failure to complete court-ordered services can support a best-interest finding.); *In re J.M.T.*, 519 S.W.3d 258, 270 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) ("A fact finder may infer from a parent's failure to take the initiative to complete the services required to regain possession of [her] child that [she] does not have the ability to motivate [herself] to seek out available resources needed now or in the future."). Given that the Department's and the trial court's primary concerns were J.S.'s exposure to drugs and violence, Appellant's recent improvement was insufficient to alleviate the trial court's concerns for the child's safety and well-being. *See N.T.*, 474 S.W.3d at 479 ("[R]ecent improvement alone is not sufficient to avoid termination of parental rights."). Appellant's uncertain living situation and failure to comply with her service plan further support the trial court's best-interest finding. *Holley*, 544 S.W.2d at 371–72; *In re S.B.*, 207 S.W.3d 877, 887–88 (Tex. App.—Fort Worth 2006, no pet.) ("A parent's drug use, inability to provide a stable home, and failure to comply with his family service plan support a finding that termination is in the best interest of the child.").

Most importantly, given the child-centered focus of the best-interest inquiry, we may not discount the child's improvement since removal. *See J.W.*, 645 S.W.3d at 746–47. "Stability and permanence are paramount" in a child's upbringing. *In re J.A.R.*, 696 S.W.3d 245, 257 (Tex. App.—Houston [14th Dist.] 2024, pet. denied). And although "[e]vidence about placement plans and adoption are, of course, relevant to best interest," a "lack of evidence about definitive plans for permanent placement and adoption cannot be the dispositive factor." *C.H.*, 89 S.W.3d at 28.

Otherwise, terminations would regularly be subject to reversal on the sole ground that "an adoptive family has yet to be located." *Id.* Here, J.S.'s foster parents are willing to care for him until he is adopted. J.S. is doing well there, and they are meeting his needs. Appellant, by contrast, has not alleviated the Department's and the trial court's concern that J.S. would be abused or exposed to illegal drugs were he returned to her. *See Holley*, 544 S.W.2d at 371–72.

Considering the evidence as it relates to Appellant's actions and inactions, the emotional and physical danger to the child now and in the future, the emotional and physical needs of the child now and in the future, Appellant's lack of parental abilities and stability, and her criminal conduct, history with the Department, and drug use, we hold that the evidence is legally and factually sufficient to support the trial court's finding that termination of Appellant's parental rights is in the best interest of the child. *See J.W.*, 645 S.W.3d at 741; *Holley*, 544 S.W.2d at 371–72.

Accordingly, we overrule Appellant's first issue.

*Section 161.001(f): "Reasonable Efforts to Return the Child"*

In her second issue, Appellant challenges the trial court's finding that the Department made reasonable efforts to return the child to her before the final termination hearing, but a continuing danger in her home prevented the return of the child. *See* FAM. § 161.001(f). For parental termination suits filed by the Department on or after September 1, 2023, the trial court may not terminate the parent-child relationship unless:

> the court finds by clear and convincing evidence and describes in writing with specificity in a separate section of the order that . . . the department made reasonable efforts to return the child to the parent before the commencement of a trial on the merits and despite those reasonable efforts, a continuing danger remains in the home that prevents the return of the child to the parent[.]

14

Act of May 25, 2023, 88th Leg., R.S., ch. 675, §§ 1, 7, 2023 Tex. Gen. Laws 1644–45 (codified at FAM. § 161.001(f)). The Department's implementation of a family service plan is generally considered a reasonable effort to return the child to the parent. *M.N.M.*, 708 S.W.3d at 328–29 (collecting cases). The evidence presented at trial demonstrates continual efforts of the Department to assist Appellant to make necessary changes to qualify for and facilitate a safe return of the child to the home.

Here, the Department filed the petition to terminate the parent-child relationship on August 22, 2023. Because Section 161.001(f) was not the law in effect when the Department initiated the underlying suit, it does not apply. *See id*.; *see also In re E.R.M.*, No. 05-25-00678-CV, 2025 WL 2898005, at *4 n.2 (Tex. App.—Dallas Oct. 10, 2025, no pet. h.) (mem. op.); *In re Z.K.L.*, No. 06-25-00003-CV, 2025 WL 1021490, at *3 (Tex. App.—Texarkana Apr. 7, 2025, no pet.) (mem. op.); *In re Z.E.C.*, No. 08-23-00282-CV, 2024 WL 779616, at *9 (Tex. App.—El Paso Feb. 26, 2024, no pet.) (mem. op.). Accordingly, we overrule Appellant's second issue.

*This Court's Ruling*

We affirm the order of the trial court.


JOHN M. BAILEY
CHIEF JUSTICE


November 6, 2025

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.